Eugene L. Schreier and Ruby R. Schreier, Plaintiffs-Counterdefendants-Appellants, v. Chicago and Northwestern Railway Company, a Wisconsin Corporation, Superior Coal Company, a Corporation, Ferdinand C. Meyer and Emma L. Meyer, His Wife, Herman Meyer and Mary Meyer, His Wife, Frances Lancaster and J. T. Lancaster, Her Husband, Lela H. Whitfield, and William Whitfield, Her Husband, John E. Weidner and Vida G. Weidner, His Wife, Charles Niebrand and Amanda F. Niebrand, His Wife, and Unknown Heirs, Legatees and Devisees of B. L. Dorsey or Any Persons Who Have an Interest Who Are Deceased and "Unknown Owners," Defendants, Chicago and Northwestern Railway Company, a Wisconsin Corporation, Defendant-Counterplaintiff-Appellee.

Gen. No. 10,937.

Fourth District.

July 9, 1968.

Rehearing denied August 27, 1968.

McGrady and Madden, of Gillespie, for appellants.

Denby & Dobbs, of Carlinville (Stuart Dobbs, of counsel), Gillespie, Burke & Gillespie, of Springfield, and Edward Warden, of Chicago, for appellee.

HANNAH, J.

This is a suit brought by Eugene L. Schreier and Ruby R. Schreier, plaintiffs, against Chicago & Northwestern Railway Co. and Superior Coal Co., defendants, seeking to quiet plaintiffs' title to the oil and gas under certain real estate owned by the plaintiffs, and to declare the defendants to have no right or title to such oil and gas under said premises, and seeking an injunction against the defendant railroad and its successors and assigns from asserting any claim to the plaintiffs' possession and right to such oil and gas. The defendant, by counterclaim, seeks a determination that it is the owner of the oil and gas under the premises in question,

together with the accompanying right to recover the same.

Plaintiffs claim to be the owners and in possession of the real estate here involved by virtue of purchase on October 2, 1953, from Charles Neibrand and Amanda Niebrand. The conveyance to plaintiffs was by warranty deed. There were no limitations upon the title in the deed taken by the plaintiffs. However, plaintiffs concede they have no title to the coal under the premises. The chain of title leading to the investment of title in the Niebrands does not appear, but it is apparently conceded that this conveyance to the plaintiffs was a valid one. The description of the premises involved is as follows:

The west half of the northeast quarter of the northeast quarter, and the northwest quarter of the northeast quarter, and the southwest quarter of the northeast quarter of Section Sixteen (16) and the east half of the southwest quarter of the southwest quarter of Section Ten (10), and five acres off the south end of the west half of the southeast quarter of Section Nine (9), all in Town Seven (7) Range Seven (7) west of the Third Principal Meridian, in Macoupin County, Illinois.

The dispute here emanates from four separate conveyances which are set forth in full in the supplemental abstract. While the chain of conveyances is not set forth, it appears that Ferdinand Meyer and Emma L. Meyer, his wife, and Herman Meyer and Mary L. Meyer, his wife, held title to the premises in question, together with other lands, as early as May 27, 1903, on which date the said owners conveyed and warranted unto B. L. Dorsey "all coal and other minerals beneath the surface" of the premises in question "together with the

right to mine and remove the same and to conduct mining operations in, under and throughout the said premises." By this deed the grantors did also "give, grant and convey to the said B. L. Dorsey for the consideration aforesaid, the perpetual right-of-way, underground, for the purpose of transportation across said land by such power and in such manner, and at, to and from such place or places, underground, as the grantees herein deemed best, any of the coal or other minerals it may mine under the above described lands or any other lands than that hereby conveyed."

On the 29th of May, 1903, the said B. L. Dorsey and Frances J. L. Dorsey, his wife, conveyed and quitclaimed to H. S. Dorsey, E. M. Dorsey, B. L. Dorsey, R. W. Dorsey, Fannie M. Edwards and Amelia C. Dorsey all interest in and to "all coal and minerals beneath the surface" of the premises in question and other premises "together with the right to mine and remove the same, and to conduct mining operations in, under and throughout said premises"; and did also convey and quitclaim to the grantees, their heirs and assigns, for value "the perpetual right-of-way underground for the purpose of transportation across all of the lands hereinbefore described, by such power, and in such manner, and at, to and from such place or places, underground, as the grantees deemed best, any of the coal or other minerals they, their heirs or assigns may mine under the above described premises, or any other lands than those hereby conveyed."

Again on the same day, May 29, 1903, H. S. Dorsey, widower, G. B. Dorsey and Moria J. Dorsey, his wife, E. M. Dorsey and Lily E. Dorsey, his wife, B. L. Dorsey and Frances J. L. Dorsey, his wife, R. W. Dorsey and Martha Dorsey, his wife, and Fannie M. Edwards and Frank W. Edwards, her husband, and Amelia C. Dorsey, a single woman, by a like conveyance, sold, conveyed and warranted to the defendant Superior Coal Co., a

corporation, "all coal and other minerals beneath the surface" of the premises in question and other premises "together with the right to mine and remove the same, and to conduct mining operations in, under and throughout said premises," and again included the same additional rights in the habendum clause.

Thereafter, on December 28, 1956, the Superior Coal Company assigned and conveyed all its interest in and to the premises in question, together with other premises not here involved, to the defendant, Chicago and Northwestern Railway Company.

It appears from the testimony of plaintiffs that on January 2, 1958, they executed an oil and gas lease to Joseph Waitukaitis. The lease is not a part of the record, nor is it known if it was recorded. Thereafter, sometime in April, 1958, oil was discovered in commercial quantities. Some four days later, according to plaintiffs, Waitukaitis advised plaintiffs he had learned that they had no title to the oil and gas, but that it was the property of the Chicago and Northwestern Railway Company. Thereafter on July 21, 1958, Waitukaitis procured an oil and gas lease from the railroad and proceeded with development under it. The record is very sketchy upon these happenings, but this is as it appears.

The ultimate question is, to whom does the oil and gas belong, the plaintiffs or the defendants? The answer to this question seems to rest with an interpretation of the three conveyances first above referred to. What the railroad received was that title vested in Superior Coal Company. The latter's title is limited to that conveyed to it by virtue of the aforesaid three conveyances.

■■ The primary object of construing a deed is to ascertain and give effect to the intention of the parties as disclosed by the instrument in question. In arriving at that intention the entire instrument must be considered together with all the language therein used. Patton v. Vining, 14 Ill2d 11, 150 NE2d 606.

429

▮▮▮▮ To avoid confusion in the construing of the two deeds, viz., Dorsey to Dorsey, et al., and Dorsey, et al., to the Superior Coal Company, it is important to observe that each of these instruments contains two separate conveyances. The first portion of the conveyance in each deed is to "all coal beneath the surface of the hereinafter described premises." The premises thereafter described are *not* the premises in question. Then following these property descriptions, the deed continues, "also all coal and other minerals beneath the surface of the hereinafter described premises." Then follows the description of the premises here involved, together with other premises not herein involved. Accordingly, we must not become confused with the language used with reference to premises with which we are not here concerned. Why this difference in language as to the several properties being conveyed, we do not know. But there must have been a reason. Every word and phrase is to be given a meaning if possible. The change of expression to "*also* all coal and other minerals" certainly indicates a change of intent as to the extent of the conveyance in the following described lands. It is a cardinal rule of construction that each and every word used must be given a meaning, if possible, and the instrument must be construed as a whole and within the limits of its four corners. There appears no ambiguity in the language used. The apparent deliberate choice of language used as to what was conveyed in the various tracts seems to indicate a definite intention upon the part of the grantor. In fact this express intention as to the premises in question begins with the deed from Meyer to Dorsey and continues through to the Superior Coal Company.

▮▮ It is argued that the use of the words "mine and remove the same, and to conduct mining operations," is inconsistent with "drilling for oil"; and that the grant of a right-of-way underground is likewise inconsistent with

430

drilling for oil. It is further urged that at the time of the conveyances coal was the only mineral being or that had been produced in Macoupin County, and that oil was not in the contemplation of the parties. The terms and conditions of a deed of conveyance are not to be varied by oral testimony or evidence de hors the instrument, except and unless there be a mutual mistake or fraud disclosed. There is no such charge or evidence to support it. Our only problem is interpreting the deeds within their four corners.

■ ■ The words "coal and other minerals" have, by the decisions of the Illinois Courts, been determined to have a settled legal meaning which includes oil and gas, with the incidental exploration, development and production rights. These words, together with the entire habendum clause here contained, cannot be construed otherwise by resort to extrinsic circumstances. Nance v. Donk Bros. Coal & Coke Co., 13 Ill2d 399, 151 NE2d 97. The latter case is almost identical with that here before the Court. As there stated:

> "the enumeration of other and incidental mining rights in the habendum clause of a conveyance of 'all coal and other mineral' does not derogate from, but enlarges the express and implied rights included in the granting clause."

Plaintiffs argue that the sustaining of the lease from the railroad will result in the irreparable damage to the plaintiffs' beneficial use of the surface of the land. Plaintiffs admit they were furnished an abstract of title at the time of their purchase of the land, but that they did not then examine it. Had they examined it they would have discovered the existence of the mineral deeds in question. A party who finds himself in the slough of mistake by reason of his own failure to read the posted warning signs cannot hope to have the aid of the court in extricating himself therefrom.

431

The facts in this case are not in dispute. The conveyances in question are unambiguous. The language used, under the decisions of our courts of review, have a well settled and fixed meaning.

From what has been said it follows the decree of the Circuit Court of Macoupin County must be affirmed.

Affirmed.

CRAVEN, Acting P. J. and TRAPP, J., concur.