459 P.2d 839

Darrel W. JOHNSON and Elizabeth Ann Johnson, his wife, Plaintiffs-Appellants,

v.

Guy T. SOWELL and Lasca Sowell, his wife, Defendants-Appellees.

No. 8796.

Supreme Court of New Mexico.

Oct. 10, 1969.

Walker & Hart, Clovis, for appellants.

Dan B. Buzzard, Clovis, Henry E. Blattman, Las Vegas, for appellees.

## OPINION

TACKETT, Justice.

This action was commenced in the District Court of Curry County, New Mexico, upon an indebtedness allegedly owing by Guy T. Sowell to Jack and Gwen Williams, who had allegedly assigned the obligation to plaintiffs-appellants Johnsons, to collect the monies to be due. The case was tried to the court without a jury and, although a judgment was entered on September 23, 1968, in favor of the plaintiffs-appellants and against Jack and Gwen Williams, a second judgment was entered on October 24, 1968, dismissing the complaint against defendants-appellants Sowells. Plaintiffs appeal from the latter judgment.

Jack Williams purchased the Pioneer Lodge in Clovis, New Mexico, on October 31, 1962, from Sellars and Hanks. In payment therefor Williams executed two $93,000 and two $15,000 notes, Sellars and Hanks each to receive a $93,000 and a $15,000 note.

The two $15,000 notes were secured by a collateral assignment to Sellars and Hanks of a $90,000 note owed by Roy and Billy Neal Williams to Jack Williams. The two $93,000 notes were secured by the motel property. The two $15,000 notes were payable over a period of eight years in monthly installments. The two $93,000 notes were payable over a period of fifteen years.

The Clovis National Bank was designated as escrow agent to collect and disburse the payments made on all notes and to act and serve in that capacity. Jack Williams sold the Pioneer Lodge to appellees Sowells on March 14, 1963. As part of the consideration for purchase, the Sowells assumed and agreed to pay the remaining balance due Sellars and Hanks on all notes provided for in the contract of October 31, 1962.

C. P. Guy, the Sowells' son-in-law, managed the Pioneer Lodge, and worked for the Sowells as their agent in renting the units, collecting money therefor and making deposits. Guy also had authority to draw checks on the Pioneer account as agent for the Sowells. Guy made payments on the $93,000 and $15,000 notes which had been assumed by the Sowells.

The Clovis National Bank continued to act as escrow agent and, on September 1, 1964, Guy made the monthly payment on all notes and discussed and worked out with Howard Martin, executive vice president of the escrow agent, the method by which the monthly payments made by the Sowells in the amount of $1963.92 were to be distributed and applied by the escrow agent. Guy was given a deposit slip by Martin indicating what part of the monthly payments was being credited to the account of appellants Johnsons. Other payments were made by Guy on behalf of the Sowells and were distributed and applied in accordance with the understanding between Guy and Martin.

Jack Williams, through his father Roy Williams, before the due date, paid the balance due on the two $15,000 notes in order to withdraw the $90,000 note which had been put up as security for the two $15,000 notes. The prepayment was solely for the benefit of Jack Williams and no discount was obtained. Upon payment by Roy Williams of the balance due on the two $15,000 notes, those notes, together with the $90,000 note securing them, were delivered to him.

On July 15, 1964, Jack and Gwen Williams contracted with appellants Johnsons to exchange certain real estate. Subparagraph (d) of the contract provides:

"* * * that there is due and payable to Williams from Guy Sowell an ob-

ligation payable monthly in the approximate amount of $400.00, said obligation to be payable for a period in excess of six years from the date hereof. Williams agrees that said payments shall be escrowed, and that the escrow agent shall be instructed to pay over to Johnson from the monthly Sowell payments an amount sufficient to meet the Williams obligation created by this subparagraph (d).[11]

It is noted that the Sowells were not a party to the contract of July 15, 1964; however, the Sowells were obligated to pay under their contract with Williams dated March 14, 1963.

After the contract between the Williams and the Johnsons concerning the Sowells' payments, the escrow agent continued to make monthly deposits to appellants Johnsons' account from Sowells' payments until June 14, 1967, at which time the unpaid balance due from the Sowells was $12,592.-24.

On October 6, 1964, the Sowells sold the Pioneer Lodge (motel) to Smith and Woodrum and, as part of the consideration, appellees-Sowells required Smith and Woodrum to assume and agree to pay the balance due on the two $93,000 and the two $15,000 notes, which appellees Sowells had assumed when they purchased from Williams.

The issues to be resolved are: (1) Were appellees indebted to Williams? (2) Was notice to the debtor of the assignment from Williams to appellants necessary? (3) Did appellees have notice of the assignments? Questions (1) and (3) are answered in the affirmative and question (2) in the negative.

Notwithstanding the trial court's conclusions, that the two $15,000 notes could be prepaid only in the event that a discount could be obtained for the benefit of both Williams and Sowells, it is apparent from the plain wording of the Sellars and Hanks contract assumed by Sowells that Williams could prepay the two $15,000 notes in order to withdraw the $90,000 note which was pledged as collateral security. In the event that a discount would result from the prepayment, which did not in fact occur, it would inure to the benefit of both Williams and Sowells. However, the obtaining of a discount was not a condition of prepayment.

■■ It does not make any difference, and it is no concern of the Sowells, as to who received the money being paid to the escrow agent. By Williams prepaying the two $15,000 notes, appellees Sowells are not prejudiced in any manner, since the Sowells were obligated to pay the balance of those two notes to Williams, rather than to Sellars and Hanks. Where the mortgagor pays the mortgage after he has conveyed the property, he is entitled to be subrogated to the rights of the mortgagee. 83 C.J.S. Subrogation § 37, at p. 647.

Appellees Sowells, therefore, were obligated to Williams for the remaining monthly payments on the two $15,000 notes; notwithstanding the trial court concluding to the contrary.

■■ Was there a valid assignment from Williams to appellants Johnsons? The trial court concluded that there was not, due to the failure of the debtor to receive notice of the assignment. With this we cannot agree, as no direct notice to appellees Sowells was necessary. The validity of an assignment of a chose in action is not affected by failure of the assignee to give notice of the assignment to the debtor. State Street Furniture Co. v. Armour & Co., 345 Ill. 160, 177 N.E. 702, 76 A.L.R. 1298 (1931); State Investment Co. v. Cimarron Insurance Co., 183 Kan. 190, 326 P.2d 299 (1958); Kivett v. Mayes, 49 Tenn.App. 272, 354 S.W.2d 492 (1961). See Annot. 80 A.L.R. 413, at 414, and cases there cited, where it is stated the weight of authority is that the assignment of part of a debt, although not assented to by the debtor, is enforceable against him in equity; however, notice to the debtor should be given by the assignee in order to protect himself against successive assignees. Salem Trust Co. v. Manufacturers' Finance Co., 264 U.S. 182, 44 S.Ct. 266, 68 L.Ed. 628, 31

A.L.R. 867 (1924); Sillman v. Twentieth Century-Fox Film Corp., 3 N.Y.2d 395, 165 N.Y.S.2d 498, 144 N.E.2d 387 (1957).

■ Even though notice was not necessary, in the case before us there was adequate notice to Guy, the agent of appellees. It cannot be disputed that Guy was Sowells' authorized agent. Notice to the agent is sufficient notice to the principal. 3 Am. Jur.2d Agency § 273, at 635. See Nickell v. United States for Use and Benefit of D. W. Falls, Inc., 355 F.2d 73 (10th Cir. 1966), wherein it is stated that notice sent by registered mail to a debtor and received by an authorized agent of the debtor was sufficient notice.

■ Appellees Sowells assert that the assignment was invalid because it did not go to the entire mortgage but only to the two $15,000 notes. With this we cannot agree. In Kandelin v. Lee Moor Contracting Co., 37 N.M. 479, 24 P.2d 731 (1933), this court said:

"At law, a partial assignment of a chose in action is not recognized unless made with the consent or ratification of the debtor.

'Courts of equity, however, have always recognized partial assignment of choses in action for many purposes, and will protect the assignees under such partial assignments whenever they can do so without working a hardship upon the debtor.'"

See also 6 C.J.S. Assignments § 75, at 1127.

There has been no hardship worked on appellees Sowells, as there was no change in the manner or method of payments by them. They were to pay to the escrow agent, who distributed and applied the payments as instructed.

We have considered the case of S & W Trucks, Inc. v. Nelson Auction Service, Inc., 80 N.M. 423, 457 P.2d 220 (Ct.App. 1969), relied upon by appellees, and find it inapplicable.

From what we have said, it follows that the judgment of October 24, 1968, should be reversed with instructions to reinstate the case on the docket and enter judgment in favor of appellants Johnsons. Costs are to be assessed against appellees Sowells.

It is so ordered.

WATSON, J., and NEAL, D. J., concur.