654 P.2d 548

**ALBUQUERQUE NATIONAL BANK, Plaintiff,**

v.

**ALBUQUERQUE RANCH ESTATES, INC., Defendant-Appellee,**

v.

**KAC, INC. and Tract C, a partnership, Defendants-Appellants.**

**No. 13957.**

Supreme Court of New Mexico.

Nov. 23, 1982.

Ruth Schifani, Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, for appellee.

George Foster Hannett, Hannett, Hannett & Cornish, P.A., James T. Paulantis, Albuquerque, for defendant-appellee Albuquerque Ranch Estates, Inc.

Charles Crider, Mathews & Crider, P.A., Albuquerque, for defendant-appellant KAC, Inc.

Patrick Villella, Sullivan, Villella, Skarsgard & Noya, Albuquerque, for defendant-appellant Tract C, a partnership.

## OPINION

DONNELLY, Judge

Defendants, KAC, Inc. (KAC), and Tract C, a partnership, have each filed separate appeals from a judgment issued in an interpleader action brought by Albuquerque National Bank. The trial court held that KAC and Tract C had forfeited their rights under a real estate contract and adjudicated that the realty covered by the agreement had revested in Albuquerque Ranch Estates, Inc. (ARE).

The seven issues raised by KAC on appeal are subsumed into three principal points. They are (1) failure to adopt its equitable and affirmative defenses; (2) invalidity of the notice of default; and (3) abuse of discretion in denying its motion for continuance. In its appeal, Tract C, claims that the court erred (1) in determining that an assignment of the contract from it to KAC released Tract C from further obligation under the agreement or to right to notice of default; (2) in determining that forfeiture was proper; and (3) for each of the reasons and grounds asserted by KAC in its appeal. We affirm.

THE FACTS

In April 1974, ARE sold to Tract C approximately 7.5 acres of unimproved land in the northeast heights of Albuquerque. The sale was made pursuant to a written real estate contract for a purchase price of $224,398.50. The contract was placed in escrow with Albuquerque National Bank. Under the terms of the contract, the parties agreed that in the event of any default, the purchaser had 90 days in which to cure the defect after being given notice of such defect. On February 15, 1979, while the original real estate contract with ARE was still outstanding, Tract C sold the property to KAC and assigned its rights under the contract to KAC.

Tract C, in February 1979, requested ARE to approve an assignment of its rights under the purchase contract to KAC. ARE approved a written assignment of all of Tract C's rights and interests in the agreement to KAC and consented to the assignment. On March 19, 1979, KAC accepted the assignment and agreed to be bound to all other terms and conditions of the original agreement. Tract C also entered into a separate contract with KAC, selling its interests in the property. It is disputed as to whether ARE was aware of the latter sale agreement.

The original contract contained the following clause:

8. It is mutually agreed that time is the essence of this contract. Should the Purchaser fail to make any of the ... payments at the respective times herein specified ... and continue in default for ninety (90) days after written demand for such payments ... has been mailed to the Purchaser ... then the Owner may, at his option, either declare the whole amount remaining unpaid to be then due,

and proceed to enforce the payment of the same; or he may terminate this contract and retain all sums theretofore paid hereunder as rental to that date for the use of said premises, and all rights of the Purchaser in the premises herein described shall thereupon cease and terminate. . . .

The first payment on principal under the contract in the sum of $32,672.42 was due on April 15, 1980. On April 11, 1980, an agent for KAC contacted Horace McKay, a vice-president of ARE, and orally requested an extension of time within which to make the required payment and offered to pay for the right to an extension. McKay advised the agent for KAC that ARE would consider the request if it were put in writing. On April 15, 1980, KAC had neither made the required installment payment nor sent to ARE a written offer requesting the extension. Two weeks after the payment was overdue, an agent for KAC, phoned McKay and inquired if an extension of time to make the payment would be agreeable. McKay again advised KAC that ARE would only consider and act upon a written request for an extension. On May 14, 1980, KAC belatedly sent to ARE a written request seeking an extension and offering to pay 15% interest on the $32,672.42 installment due in April, in return for consent to defer the required installment payment until July 31, 1980.

ARE responded by letter dated May 19, 1980, stating that it understood Tract C's initial written request concerning the proposed extension to have offered 15% of $32,672.42 or the sum of $4,900.00. ARE stated that it would agree to grant the extension based upon the payment of the amount spelled out in the letter of May 14, 1980, and only if the money was paid immediately. ARE's letter also stated:

This letter is not to be considered as an extension of the time within which the contract payments are required to be made. Further, this letter is to be considered as a written demand for such payment and failure to pay the same within the time required by the contract will result in either a declaration that the whole amount remaining shall be due or a termination of this contract at the option of [ARE].

ARE's letter of May 19, 1980, was sent by certified mail to the return address shown on the envelope in which KAC's letter of May 14, 1980, had been mailed. KAC received the letter on May 23, 1980, but did not send any money in consideration for the requested extension. By letter dated May 27, 1980, Douglas Allyn, an agent for KAC, wrote to McKay and advised him that KAC had not meant to indicate it would pay the amount of $4,900.00 for the requested extension. Instead, Allyn stated KAC had meant to offer $1,437.01, but now offered to pay $3,132.00 for the extension and tendered a check in that amount. The letter from Allyn on behalf of KAC, addressed to McKay, also stated that the enclosed check was delivered subject to several conditions:

1. Collection of this check constitutes your agreement that the purchase documents shall be amended so that the 1980 installment is due on July 31, 1980 rather than April 15th.

2. K.A.C., Inc. is relieved of any default by not having made the April 15, 1980 payment and any notice of default is withdrawn.

After receipt of the May 27th letter of tender, ARE never approved any extension of time within which KAC could make the payment of the past due installment. ARE did not deposit the tendered check for collection or withdraw its May 19, 1980, notice of default.

In mid-June of 1980, James Hall, the managing agent of Tract C, called ARE and was told that ARE had sent KAC a notice of default and had not authorized any delay in payment of the past due installment under the contract. On behalf of Tract C, Hall then sent a demand letter to KAC, informing it that unless it brought current within thirty days all payments due under the purchase contract Tract C would exercise its thirty day option under paragraph 8 of the real estate contract between Tract C and KAC.

KAC received Tract C's demand letter but did not reply to it, nor did KAC make

any payment to ARE within thirty days. KAC also failed to contact ARE after receiving Hall's letter.

On July 31, 1980, the date to which KAC had requested an extension of time for making payment, KAC again failed to pay the 1980 installment. On August 19, 1980, after the installment payment was past due and 93 days after ARE had mailed its notice of default, ARE notified the escrow agent, Albuquerque National Bank, that it was electing to exercise its rights of forfeiture under the real estate contract. ARE declared the agreement between the parties to be terminated, asked that all escrowed documents be released to ARE and instructed the bank not to accept any further payments under the contract.

Upon learning of ARE's action declaring the contract terminated KAC on August 20, 1980, tendered to Albuquerque National Bank a check for $32,472.42. The Bank notified ARE of its receipt of the tendered payment; however, ARE notified the Bank that it would refuse to accept any further payments under the contract due to the default.

Thereafter, Albuquerque National Bank filed this action in interpleader pursuant to N.M.R.Civ.P. 22, N.M.S.A. 1978 (1980 Repl. Pamp.), requesting that the court adjudicate the rights of each of the parties under the contract. Following trial, the court found that ARE had never agreed to an extension of time for making the April 15, 1980, installment payment by KAC. The court also concluded that ARE's notice of default was proper and valid and that KAC had failed to make timely payment as required by the contract in order to cure the notice of default. The trial court entered judgment in favor of ARE, determining that it was entitled to the benefit of the forfeiture provisions and was entitled to an order declaring the contract terminated as to KAC and Tract C.

## I. KAC'S APPEAL

### A. *Claim of Equitable and Affirmative Defenses.*

KAC has asserted numerous challenges to the trial court's findings and the court's

ruling that ARE was entitled to forfeiture of the contract.

■ (1) We address first KAC's claim that the retention of its tendered check for $3,132.00 amounted to an acceptance of the terms and conditions of its letter requesting an extension of time for making the first installment payment. KAC points out that although ARE did not cash the check, it did not return it and continued to retain the instrument.

KAC relies upon *Warren v. New York Life Ins. Co.,* 40 N.M. 253, 58 P.2d 1175 (1936) and *Miller v. Montgomery,* 77 N.M. 766, 427 P.2d 275 (1967), for the principle that under the doctrine of accord and satisfaction retention of a tendered check for an unreasonable period of time amounts to an acceptance of those conditions because the creditor has a duty either to notify the debtor of his rejection of the tender or to return the check. Although KAC has correctly cited precedent indicating that retention of a tendered check for an unreasonable time without notice to an offeree may constitute an acceptance thereof, under the facts herein an accord and satisfaction did not exist.

KAC's letter dated May 27 seeking extension did not constitute an accord and satisfaction because the check tendered did not purport to be *in full* satisfaction of KAC's obligations under the contract, but instead it was tendered as an addtional payment for modification of the time for making the annual installment payment. *See Smith Const. Co. v. Knights of Columbus, Coun.,* 86 N.M. 50, 519 P.2d 286 (1974). Moreover, the actions of ARE in retaining the check cannot be construed to amount to an agreement between the parties to grant an extension of time for payment because KAC failed to comply with other terms proposed by it in its letter. KAC failed to make the required payment on or before the date of July 31, 1980—the last day of the proposed period of extension. KAC did not make the full payment due until more than two and

one-half weeks following July 31, 1980. Under these circumstances, ARE's retention of the check cannot be deemed an agreement to the requested extension.

■ (2) KAC argues further that the trial court erred in refusing to rule favorably upon its defenses of estoppel, waiver, laches, mistake of fact and unjust enrichment. Each of these affirmative defenses necessarily must stand or fall upon the evidence before the trial court. The evidence adduced at trial, although conflicting in part, was sufficient to sustain the findings of the trial court. Although on this same evidence the trial court could have reached a decision validating KAC's affirmative defenses and sustaining appellant's requested findings of fact and conclusions of law, the existence of conflicting evidence is not grounds for reversal so long as the findings which were made are supported by substantial evidence. *Lucas v. Lucas,* 95 N.M. 283, 621 P.2d 500 (1980); *State ex rel., Etc. v. Natural Father,* 93 N.M. 222, 598 P.2d 1182 (Ct.App. 1979).

The trial court adopted numerous key findings of fact contrary to the position asserted by appellants, including a finding that "[a]t no time did [KAC] and [ARE] agree to an extension of the time within which to make the April 15, 1980 payment" due under the real estate contract. The court further found that KAC knew that ARE's letter of May 19 was a notice of default and demand for payment under the contract and that KAC was aware of "the time within which it was required to cure the default." The court found additionally that KAC and Tract C's failure to pay the 1980 annual payment to ARE in a timely manner "was made with knowledge of the fact of default ... and of the legal consequences of a failure to cure the default within the time provided by the contract."

The trial court concluded with respect to KAC's equitable defenses that: "The defenses of waiver, equitable estoppel, and mistake of fact are affirmative defenses, and the burden of proving them rests upon the party asserting them. Tract C and KAC, Inc. failed to prove by a preponderance of the evidence the defenses of equitable estoppel, waiver and mistake of fact...."

■ In order to establish a claim of equitable estoppel the party asserting such defense must establish each of the factors set forth in *Capo v. Century Life Ins. Co.,* 94 N.M. 373, 377, 610 P.2d 1202, 1206 (1980). These are:

[A]s related to the party estopped * * * (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention that such conduct shall be acted upon by the other party * * * and (3) knowledge, actual or constructive, of the real facts * * *. As related to [the party claiming] estoppel, the essentials are: (1) lack of knowledge and of means of knowledge of the truth as to the facts in question * * * (2) reliance upon the conduct of the party estopped * * * and (3) action based thereon of such a character as to change its position prejudically. (Cite omitted.)

■ Significantly, here, KAC has conceded that it did not make the installment payment until after the date of expiration of its requested extension. Under the circumstances, KAC cannot be heard to assert that it relied upon the conduct of ARE in delaying its tender of the delinquent payment beyond even the date of July 31, 1980.

■ Similarly, KAC's assertion of the defense of waiver was decided adversely to appellant. A waiver is the intentional relinquishment of a known right or such conduct as warrants an inference of the relinquishment of the right, resulting from an express agreement between the parties or which is inferred from circumstances indicating an intention to waive. *Moss Theatres, Inc. v. Turner,* 94 N.M. 742, 616 P.2d 1127 (Ct.App.1980) (*quoting Bastanchury v. Times-Mirror Co.,* 68 Cal.App.2d 217, 156 P.2d 488 (1945)).

■■ Since KAC's claim of waiver was asserted as an affirmative defense, whether the defense has been proven becomes a question of fact for determination by the trial judge. The trial judge, based upon conflicts in the testimony, determined KAC had failed in its burden of proof. In light of the existence of substantial evidence to support the trial court's findings upon this issue, we find no error. The existence of waiver is a factual issue and which must be determined under the facts of each case. *Peoples State Bank v. Ohio Cas. Ins. Co.,* 96 N.M. 751, 635 P.2d 306 (1981).

■■ A court may grant relief in appropriate cases from the consequences of a material mistake of fact. *Rabbit Ear Cattle Company v. Frieze,* 80 N.M. 203, 453 P.2d 373 (1969). To entitle a party to relief on the basis of a "mistake of fact," the party must establish that he was ignorant of a material existing fact or acted under the erroneous belief that some 'essential fact supposed to exist really does not exist. *Id., Springdale Gayfer's Store Co. v. D.H. Holmes Co.,* 281 Ala. 267, 201 So.2d 855 (1967).

■■ Generally, however, where the mistake of fact is attributable to a party's own negligence in failing to exercise reasonable diligence in ascertaining the true facts and he had available the opportunity to ascertain the truth, equity will not grant relief. *United States v. Ames,* 99 U.S. 35, 25 L.Ed. 295 (1878); *Schreier v. Chicago and Northwestern Railway Co.,* 96 Ill. App.2d 425, 239 N.E.2d 281 (1968). A party seeking such relief must show that his ignorance was excusable. The equitable defense of mistake of fact is not available where the alleged mistake was occasioned by a party's own negligence and against one who was free from fault. *United States v. Ames, supra.* The trial court's denial of KAC's equitable defenses was supported by substantial evidence.

(3) KAC argues that forfeiture of its rights under the purchase agreement will result in an unjust enrichment to ARE and that it would be inequitable to enforce the termination provisions of the contract.

KAC contends that it has already paid almost $90,000.00 under the contract to Tract C.

■ Equity will utilize its powers to prevent a party from unjustly enriching himself at the expense of another where the circumstances indicate that such result would be harsh and inequitable. *American University v. Forbes,* 88 N.H. 17, 183 A. 860 (1936); *see generally* Annot., 134 A.L.R. 1064 (1941).

■■ Determination of whether a forfeiture provision of a real estate contract should be enforced is a matter within the sound discretion of the trial court based on the evidence before it, and its decision will not be set aside unless manifestly against the clear weight of the evidence. *Standard Fashion Co. v. Siegel-Cooper Co.,* 157 N.Y. 60, 51 N.E. 408 (1898); *see also Citizens Bank of Clovis v. Williams,* 96 N.M. 373, 630 P.2d 1228 (1981). Equity denotes a spirit of fairness and justness between parties whose rights or claims are in conflict. *Demers v. Gerety,* 92 N.M. 749, 595 P.2d 387 (Ct.App.) *rev'd on other grounds* 92 N.M. 396, 589 P.2d 180 (1978). Although equity abhors forfeitures, *Stamm v. Buchanan,* 55 N.M. 127, 227 P.2d 633 (1951), the decision whether under the existing facts and equitable factors present before the court a forfeiture or termination should be permitted is a matter for determination by the trial judge. *See Smith v. Price's Creameries, Div. Etc.,* 98 N.M. 541, 650 P.2d 825 (1982).

■ As testified by Allyn, an agent for KAC, the reason KAC did not make the installment payment was that the corporation at the outset "decided to try and see what we could do about delaying ... these payments." Considering that an installment payment was due on April 15, 1980, and that when the payment was finally tendered it was more than four months overdue, the trial court's denial of KAC's claims of unjust enrichment and its refusal to recognize KAC's equitable defenses was not error.

## B. *Claim of Improper Notice*

KAC asserts that the trial court erred in giving effect to ARE's notice of default dated May 19, 1980, because the notice was defective and invalid. Specifically, KAC challenges the court's finding that ARE's letter was mailed on May 19, 1980, and that it was mailed to a proper address. KAC contends that the court's finding is not supported by substantial evidence and that the address used in ARE's notice was not a valid current address. KAC also argues that notice was improperly sent by certified mail instead of ordinary mail, that the notice was sent prematurely, that a copy was not sent to the escrow agent, that the notice did not state the amount demanded or the date by which payment was to be made and that a copy of the notice of default was not placed of record with the county clerk where the property was located.

Examination of the record, however, disposes of KAC's claim that the court's finding was not supported by substantial evidence. The testimony of Douglas Allyn, agent for KAC, acknowledged receipt of the notice of default on behalf of KAC. ARE's notice of default was sent to the same address shown as the return address on the letter sent to it from Allyn, dated May 14, 1980. Moreover, the default notice was received by Allyn more than three months before KAC responded by its tender of payment to ARE on May 27, 1980.

A notice of default must be clear and sufficiently articulated so as to place the recipient on notice of an unmistakable intent to claim a forfeiture. *Nelms v. Miller,* 56 N.M. 132, 241 P.2d 333 (1952). However, notice to a party's authorized agent is proper notice to the principle. *Johnson v. Sowell,* 80 N.M. 677, 459 P.2d 839 (1969); *Perez v. Velasquez,* 80 N.M. 319, 455 P.2d 185 (1969); *see also Town of Hurley v. N.M. Municipal Boundary Com'n.,* 94 N.M. 606, 614 P.2d 18 (1980). Proof of Allyn's authority to act as an agent for KAC is further evidenced by the fact that on May 27, 1980, he wrote to ARE acknowledging receipt of its letter and tendering a check for an extension in the amount of $3,132.00.

The contract assumed by KAC provided that in the event of default, all previously paid installments may be considered as rent. In New Mexico, courts have not hesitated to enforce real estate sales contracts which contain provisions allowing for the giving of a notice of default where the amounts previously paid are determined to approximate rent. Such agreements are subject to enforcement where reasonable notice of default is provided under the terms of the contract. *Hale v. Whitlock,* 92 N.M. 657, 593 P.2d 754 (1979); *Davies v. Boyd,* 73 N.M. 85, 385 P.2d 950 (1963).

KAC has not shown itself to come within any of the exceptions which would entitle it to avoid the cancellation provisions of the contract between the parties. The notice of default given by ARE was unambiguous. Whether ambiguity exists in a written contract is subject to determination as a matter of law. *Young v. Thomas,* 93 N.M. 677, 604 P.2d 370 (1979). The trial court concluded that the notice of default given by ARE substantially complied with the forfeiture provisions provided under the contract between the parties.

KAC also contends that the default notice of ARE was invalid because the contract was silent as to the manner required for mailing such notice, and thus notice should have been by ordinary, not certified, mail. This argument is without merit. In the absence of express contractual provision as to the type of mailing required between parties, proof of actual delivery and receipt of the notice is sufficient. Since KAC in fact received the notice, the purpose of the notice clause in the contract was fulfilled. *Campbell v. Kerr,* 95 N.M. 73, 618 P.2d 1237 (1980). Similarly, KAC's attack upon the validity of the default notice because ARE did not send a copy to Albuquerque National Bank as escrow agent or file a copy of an affidavit of default with the Bernalillo County Clerk must also fail because the provisions of the contract do not impose such requirements. While it is common practice to send a copy

**104**

of notices of default to the escrow agent or to record a copy with the County Clerk where the property is located, failure to do so under the facts herein did not invalidate the notice of default.

■ We also reject KAC's arguments that the notice of default was sent prematurely or that the notice failed to specify the amount of the delinquency and the date within which payment was to be made. The provisions of the contract govern the requirements for notice of default and ARE had no duty to reiterate the amounts required to be paid under the contract. In the absence of the default being cured, there was no requirement to send a second notice of default.

### C. Denial of Continuance

KAC asserts that the trial court abused its discretion in denying its motion for a continuance of the trial setting because Richard Crake, the president and principal shareholder of KAC, had been murdered on May 12, 1981, that his death impaired its effective preparation for trial and that KAC was prejudiced by having to proceed to trial on the June 29, 1981, setting.

■ The granting of a continuance is within the sound discretion of the trial court and the trial judge's denial of a continuance will be reversed only upon a demonstration of clear abuse of such discretion. New Mexico Feeding Co., Inc. v. Keck, 95 N.M. 615, 624 P.2d 1012 (1981); Camp v. Bernalillo County Medical Center, 96 N.M. 611, 633 P.2d 719 (Ct.App.1981). Although the death of the president of KAC undeniably imposed some hardship upon KAC in the administration of its corporate affairs, prior to his death Crake disclaimed any specific knowledge of the basic transactions involved in this lawsuit.

Shortly before Crake's death, ARE sought to take his deposition. Counsel for KAC moved for a protective order and represented to the trial court that he denied "any knowledge of the details of the transactions involved" relating to dealings between the parties and further stated that

Crake would be willing to sign an affidavit to that effect if necessary.

Subsequently, Douglas Allyn of KAC, whose signature appeared upon most of the relevant letters from KAC to ARE, testified at trial. Allyn testified, in contradiction to the facts stated in KAC's motion for protective order, that Crake had been the individual who put KAC together and who had handled the negotiations for the purchase of the land on behalf of KAC. Allyn testified, however, that he and Crake jointly decided to send the letter to ARE dated May 27, 1980, and the check for further tender of payment, dated June 2, 1980.

■ KAC sought to prevent the taking of Crake's pretrial deposition by its motion for protective order and by representing to the trial court that Crake was without any knowledge of material details surrounding the transactions between KAC and ARE. KAC has not pointed out with specificity how it was prejudiced by the court's denial of its requested continuance. In light of the facts before the trial court and in the absence of KAC's failure to indicate with particularity any resulting prejudice, generalized allegations of prejudice are not sufficient to establish an abuse of discretion on the part of the trial court.

The trial court did not err in denying KAC the relief sought by it or in determining that it forfeited its interests to the land in question.

### II. APPEAL OF TRACT C

#### A. Effect of the Contractual Assignment

Tract C contends that the trial court erred in its determination that ARE's approval of the assignment of the real estate contract between ARE and Tract C released Tract C from further obligation under the contract and absolved ARE from any duty to give Tract C notice of default under the agreement or supply it with a copy of the demand for payment.

Under the terms of the agreement entered into between Tract C and KAC, the parties expressly provided that Tract C as-

signed unto KAC "all rights, title interest and equity in and to * * * [the] Real Estate Contract [between ARE and Tract C] dated April 5, 1974 * * *."

James Hall, an attorney and the managing agent for Tract C, testified that although he did not receive a copy of the letter giving notice of default to KAC, he knew at least by May 4, 1980, that KAC had not made the installment payment due on April 15, 1980, and that he learned from ARE, in June 1980 that ARE had sent a notice of default to KAC. Upon learning of the notice of default, Hall wrote a letter to KAC dated June 24, 1980, stating: "[A]s manager of the properties of Tract C * * * [I] have been informed that a demand has been made upon you to pay the April 15th payment due" under the real estate contract between ARE and Tract C. In this letter Hall stated that a failure to make payments due under the contract was a breach of the agreement between Tract C and KAC and that "demand is hereby made upon you to bring the underlying contract to a current status * * * within thirty (30) days from the date of this letter."

As shown by the above evidence, Tract C had actual knowledge of the fact of KAC's default under the contract and that a notice of default had been given to KAC by ARE.

Tract C's assignment of all of its right, title and interest under its contract between ARE and itself to KAC relieved ARE of any obligation to send notices of default to Tract C. In *Drips v. Moore,* 179 Cal. 249, 176 P. 159 (1918), the court dealt with a fact situation similar to the instant case. The court held that a purchaser who assigns all its right, title and interest to a third party, retains no interest in the property.

Under the evidence, the trial court's finding and conclusion of law that ARE was not obligated to send formal notice of default to Tract C was correct.

B. *Claims of Inequitable Result*

Tract C also argues that the trial court's findings upholding ARE's declaration of default resulted in the bestowing of unconscionable advantage and unjust enrichment upon ARE.

The district court, in the exercise of its equitable powers, will not uphold a forfeiture under circumstances where it would be unfair to permit a vendor to cancel the contract, regain title to the property and retain all payments previously made. *Eiferle v. Toppino,* 90 N.M. 469, 565 P.2d 340 (1977).

Under the circumstances present here, however, Tract C assigned all of its rights under the purchase agreement to KAC. Further, Tract C had actual knowledge of the fact of default for a period of time in excess of ninety days as well as knowledge of the fact of the sending of a notice of default by ARE; the failure to send a copy of the notice to Tract C did not defeat the effectiveness of the declaration of default.

Tract C also has advanced arguments similar to KAC that permitting a default herein would result in unjust enrichment to ARE and an unconscionable result, considering the equities of the parties. Tract C argues that because of the substantial appreciation of the value of the realty covered under the contract, upholding a forfeiture herein would result in the imposition of a harsh result upon it and its purchaser KAC.

Although the land under the contract may have materially appreciated in value, this does not dictate reversal of the trial court's findings upholding the validity of forfeiture. Tract C has additionally enumerated a number of other factors which it contends necessitate overturning the trial court's findings upholding the forfeiture. While the evidence may have supported findings and conclusions different from those adopted by the trial court, this does not warrant our overturning the ruling of the trial court where its decision and findings were supported by substantial evidence and are equitable in their result. *Reynolds v. Reynolds,* 132 Mont. 303, 317 P.2d 856 (1957); *see Cardenas v. United Nuclear Homestake Part.,* 97 N.M. 46, 636 P.2d 317

(Ct.App.1981). Where a contract is fair and unambiguous in its terms, a court will not amend or alter the terms of a contract and will enforce the agreement as made by the parties. *Smith v. Price's Creameries Div. Etc., supra; In re Will of Carson,* 87 N.M. 43, 529 P.2d 269 (1974).

 On appeal we neither weigh conflicts in the evidence nor determine the credibility of witnesses. *First National Bank of Santa Fe v. Wood,* 86 N.M. 165, 521 P.2d 127 (1974). The function of an appellate court is to view the evidence in a light most favorable to support the findings and conclusions of the trial court. The decision of the trial court will not be reversed unless it appears that its findings and conclusions cannot be sustained either by the evidence or the permissible inferences therefrom. *Lujan v. Pendaries Properties, Inc.,* 96 N.M. 771, 635 P.2d 580 (1981). This rule applies to Tract C's contention that upholding the trial court's decision permits an unconscionable result. The contract entered into between the parties specifically contemplated the right of ARE to declare a forfeiture in the event of non-payment of amounts due after notice of default. Consideration of the evidence and the equities of the respective parties do not show an abuse of discretion on the part of the trial court or that its decision is not supported by substantial evidence.

Tract C has also adopted by reference each of the grounds asserted by KAC in its appeal. Careful review of each of the arguments advanced by Tract C does not convince us that the decision of the trial court was in error or that its decision should be overturned.

The judgment of the trial court is affirmed. Appellee is awarded its costs on appeal.

IT IS SO ORDERED.

PAYNE, Acting C.J., and FEDERICI, J., concur.