617 P.2d 149

**Lydia REEVES, Petitioner,**

v.

**FOUTZ AND TANNER, INC., d/b/a Tanner's Big Dollar, Respondent.**

**Grace BEGAY, Petitioner,**

v.

**FOUTZ AND TANNER, INC., d/b/a Tanner's Big Dollar, Respondent.**

**Nos. 12807, 12808.**

Supreme Court of New Mexico.

Sept. 4, 1980.

Rehearing Denied Oct. 10, 1980.

Judy A. Flynn–O'Brien, Earl R. Mettler, Timothy V. Flynn–O'Brien, Shiprock, for petitioners.

John Schindler, Farmington, for respondent.

George W. Kozeliski, Gallup, Jeff Bingaman, Atty. Gen., Paul L. Biderman, Asst. Atty. Gen., Santa Fe, amici curiae.

OPINION

SOSA, Chief Justice.

These suits were brought as separate actions but were consolidated by the Court of Appeals because the issues were essentially the same. The trial court held for plaintiffs, the Court of Appeals reversed, and we reverse the Court of Appeals.

Plaintiffs Reeves and Begay are uneducated Navajo Indians whose ability to understand English and commercial matters are limited. Each of them pawned jewelry with the defendant whereby they received a money loan in return for a promise to repay the loan in thirty days with interest. The Indian jewelry left with defendant as collateral was worth several times the amount borrowed. The plaintiffs defaulted and defendant sent each of them a notice of intent to retain the collateral, though Reeves claimed she never received notice. The retention was not objected to by either plaintiff. Defendant then sold the jewelry in the regular course of its business.

The question we are presented with is whether a secured party who sends a notice of intent to retain collateral, in conformance with Section 55–9–505, N.M.S.A. 1978 of the Uniform Commercial Code, may sell the collateral in its regular course of business without complying with Section 55–9–504, N.M.S.A. 1978? We decide that the secured party in this case could not sell the collateral without complying with Section 55–9–504.

The Uniform Commercial Code provides a secured party in possession with two courses of action upon the default of the debtor. Section 55–9–504 provides generally that the secured party may sell the collateral, but if the security interest secures an indebtedness, he must account to the debtor for any surplus (and the debtor must account for any deficiency). Section 55–9–505(2) provides the secured party with the alternative of retaining the collateral in satisfaction of the obligation. Under this section, the secured party must give written notice to the debtor that he intends to keep the collateral in satisfaction of the debt. The debtor is then given thirty days to object to the proposed retention and require the sale of the property according to Section 55–9–504.

In the present case we will assume that defendant gave proper notice to both Reeves and Begay of its intention to retain the collateral and that neither objected within thirty days. The trial court found

that the defendant, in accordance with its normal business practice, then moved the jewelry into its sale inventory where it was sold to Joe Tanner, president of defendant corporation, or to Joe Tanner, Inc., a corporation owned by Joe Tanner and engaged in the sale of Indian jewelry. There was no accounting to plaintiffs of any surplus. The trial court also found that the defendant did not act in good faith in disposing of the jewelry, taking into consideration the relative bargaining power of the parties.

The defendant argues that the trial court should be reversed because it applied Section 55–9–504. It essentially argues that once it complied with Section 55–9–505(2) and sent the notice of intent to retain, it could do as it pleased with the property once the thirty days had elapsed without objection. The debtor–creditor relationship terminates, they claim, and the creditor becomes owner of the collateral.

The plaintiffs argue that the trial court was correct in applying Section 55–9–504 to require that any surplus from the sale of collateral be returned to the debtor. They urge that the intention of the secured party should control and where he intended to sell the collateral and did sell the collateral in the normal course of business, he must comply with Section 55–9–504 which governs sales of such collateral.

Neither party to this action has cited a case which has dealt directly with the issue here, but amicus has referred us to a Federal Trade Commission case on the subject where it was stated:

In the Draftsmen's Statement of Reasons for 1972 Changes in Official Text, the Draftsmen summarized the purpose of Section 9–505 as follows:

"Under subsection (2) [9–505(2)] of this section the secured party may in lieu of sale give notice to the debtor and certain other persons that he proposes to retain the collateral in lieu of sale."

The foregoing language strongly suggests that waiver of surplus and deficiency rights under 9–505 is appropriate only when prompt resale of repossessed collateral in the ordinary course of business is

not contemplated by the creditor . . . . That being so, use of Section 9–505 by an automobile dealer, particularly one not disposed to pursue deficiency judgments, would appear calculated solely to extinguish surplus rights of consumers, which we do not believe was the intended purpose of Section 9–505.

*In the Matter of Ford Motor Company, Ford Motor Credit Company, and Francis Ford Inc.*, 93 F.T.C.Rep. ——, 3 CCH Trade Reg.Rep. 21756, 21767 (F.T.C. Docket No. 9073, Sept. 21, 1979). The Commission went on to say that a creditor of this type is not foreclosed from using Section 9–505(2) so long as he intends to retain the collateral for his own use for the immediately foreseeable future, rather than to resell the collateral in the ordinary course of business. We agree with the approach used by the Federal Trade Commission.

The Court of Appeals reasoned that once the creditor elected to retain the collateral, and followed the mechanics of Section 55–9–505, the property became his to keep or to sell. We do not find fault with this reasoning, but it misses the point. Defendant can do as he pleases with the property, but where he intends to sell the property in the regular course of his business, which is in substance selling the property as contemplated by Section 55–9–504, he must account for a surplus in conformity with Section 55–9–504.

The defendant also argues that plaintiffs could have objected to the retention, thus forcing a sale in compliance with Section 55–9–504. But because there was never any actual intent to retain under Section 55–9–505(2), the failure of plaintiffs to timely object does not foreclose their claim. Moreover, the fact that plaintiffs could have objected means nothing in this context; their objection would only have served to cause a sale of the goods, which sale was already intended by defendant.

The defendant also argues that the trial court erred in finding that it acted in bad faith. We need not reach this question because bad faith was not material to the trial court's conclusions of law and judgment, which we find to be proper.

The defendant next claims error in the fact that the trial court allowed interest on the judgment from November 1, 1974. The date is the approximate day on which the loss took place and is apparently not controverted. The amount due the plaintiffs was a sum certain once the jewelry was sold, as calculated according to the provisions of Section 55–9–504. It was not error for the court to allow prejudgment interest or to allow interest as a portion of the damages. *Sundt v. Tobin Quarries*, 50 N.M. 254, 265, 175 P.2d 684, 690–91 (1946).

The judgment of the trial court is affirmed.

EASLEY, FEDERICI and FELTER, JJ., concur.

PAYNE, J., dissenting, based upon the opinion of the Court of Appeals.