786 P.2d 674 (1990)
109 N.M. 447
Leo SANCHEZ, Plaintiff-Appellant,
v.
NEW MEXICO DEPARTMENT OF LABOR, EMPLOYMENT SECURITY DIVISION, and Furr's, Inc., Defendants-Appellees.
No. 18193.
Supreme Court of New Mexico.
February 12, 1990.
*675 Duff Westbrook, Albuquerque, for plaintiff-appellant.
Hal Stratton, Atty. Gen., D. Sandi Gilley, Sp. Asst. Atty. Gen., for defendants-appellees.

OPINION
MONTGOMERY, Justice.
Plaintiff Leo Sanchez (Sanchez) appeals the denial of his application for unemployment benefits. The Department of Labor, Employment Security Division (Department), originally awarded him benefits. His employer, Furr's Inc. (Furr's) appealed. After hearing evidence the Department's hearing officer reversed, holding that Sanchez was disqualified from receiving benefits because his employment had been terminated for misconduct. After the Department's Board of Review affirmed the hearing officer, Sanchez filed a petition for certiorari in district court pursuant to NMSA 1978, Section 51-1-8(M) (Repl. Pamp. 1987), and SCRA 1986, 1-081(C) (now SCRA 1986, 1-081(B) (Cum.Supp. 1989)). The district court entered findings and conclusions upholding the denial of benefits. Finding that the ruling of the district court is supported by substantial evidence in the record as a whole, we affirm.

I.
Sanchez was employed as assistant manager at a supermarket in Albuquerque. As part of his job he was responsible for ensuring that grocery items were unloaded from delivery trucks onto the loading dock and then stocked onto the store's shelves prior to the store's opening at 8:00 a.m. In order to accomplish this he was required to report to work at 4:00 a.m.
In 1987 the store had been experiencing problems with excess shrinkage of inventory. Because of this, in February 1987 the employer hired a security officer to conduct an investigation of what was apparently an ongoing inventory theft problem. In July 1987, still concerned with possible theft, the employer instituted a policy whereby all members of management were prohibited from opening or closing the store unaccompanied by another employee. Under the policy the person in charge of opening the store, accompanied by another authorized employee, was required to sign the opening/closing log, print the name of the second employee present, and indicate actual time of opening. Sanchez was aware of this policy and had, along with other managerial employees, signed a written copy of the policy. The copy signed by Sanchez stated that "THERE WILL BE ABSOLUTELY NO EXCEPTIONS TO THIS POLICY!!!"
On the morning of December 31, 1987, the investigator employed by Furr's was *676 conducting surveillance from a parking lot across the street from the store. He observed Sanchez arriving at the store at approximately 3:26 a.m. He testified that Sanchez circled the store once in his car, then parked near the building, not in his usual parking place, and entered the store alone. He left approximately ten minutes later, drove around the building a second time with his lights off, and then drove away. He returned shortly after 4:00 a.m. and parked in his usual space. By the time he returned two other employees had opened the store. They discovered that the alarm system for both the front and back doors of the store had been turned off. Sanchez' time card indicated that he clocked in at 4:08 a.m.
Sanchez steadfastly maintained that the reason he entered the store early was to verify whether a delivery truck had arrived. He stated that the store had experienced problems with trucks arriving late or not at all and that during this period the store was understaffed and it therefore had become increasingly difficult for him to ensure that the store shelves were stocked on time. He further claimed that he had asked the manager to call him to tell him whether the truck had arrived, and when he was not called he went to the store to check for himself. When he left the store he went to pick up another employee whom he often gave a ride to work, but when the employee did not come out he returned to the store in order to begin his shift at 4:00.
The security officer testified that he was keeping the store under surveillance because of problems with shortages in cigarettes. There are suggestions in the record that Sanchez had been under suspicion because his wife owned a smoke shop, but at the hearing the Furr's district manager testified that Sanchez was not fired because he was suspected of stealing but because he had violated the company policy by entering the store alone. There is no evidence that Sanchez had violated the policy on any other occasion.
Sanchez argues two grounds for reversal on appeal: (1) The district court's determination that he was discharged for misconduct was not in accordance with law, and (2) the district court's decision is not supported by substantial evidence. We first discuss the standard of review, then the two issues raised.

II.
On certiorari from an agency determination the district court is to determine whether, viewing the evidence in the light most favorable to the agency's decision, the findings have substantial support in the record as a whole. In re Apodaca, 108 N.M. 175, 177, 769 P.2d 88, 90 (1989). The court may not reweigh the evidence. Id.
The district court is required to adopt the agency's findings of fact that it determines are supported by substantial evidence and to make such conclusions of law as lawfully follow therefrom. Rodman v. New Mexico Empl. Sec. Dep't, 107 N.M. 758, 763, 764 P.2d 1316, 1321 (1988). Where, however, the court decides that the result reached by the agency was correct, but that the specific findings are inadequate or ambiguous due to a misapprehension of the law, the court may adopt independent findings and conclusions based on the record made before the agency. Id. This Court reviews the district court's findings to see if they are supported by substantial evidence in the record as a whole.
In this case the district court entered its own findings and conclusions. The court concluded that "[t]he claimant's conduct in entering the employer's premises at 3:26 a.m. on December 31, 1987 alone constitutes a willful and wanton violation of a resonable [sic] and known rule," and that "[t]he claimant was discharged for misconduct connected with work and is properly disqualified from receipt of unemployment compensation benefits for having been discharged for misconduct... ."

III.
NMSA 1978, Section 51-1-7(B) (Repl. Pamp. 1987) provides that an individual shall not be eligible to receive unemployment compensation benefits "if it is determined by the department that he has been *677 discharged for misconduct connected with his work or employment." Misconduct is not defined in the statute.
Sanchez argues that the Department used an incorrect definition of "misconduct." The hearing officer concluded that:
"misconduct" denotes a material breach of the contract of employment or conduct reflecting a wilful disregard to [sic] the employer's best interests.
An employee discharged for violating a company rule, generally is considered discharged for misconduct connected with his work... . However, in order for misconduct connected with his work to be found, it must be determined that the claimant knew, or should have known of the rule and that the rule was reasonable and enforced.
Sanchez points out that this definition of misconduct was expressly rejected by this Court in Rodman v. New Mexico Empl. Sec. Dep't, 107 N.M. 758, 763, 764 P.2d 1316, 1321 and In re Apodaca, 108 N.M. 175, 179, 769 P.2d 88, 92. His contention is correct. This definition had been used by the Department in In re Apodaca, where we stated:
We rejected this definition in Rodman as inconsistent with the Mitchell standard requiring a willful or wanton disregard of the employer's interests. The use of the term "or" implies that any breach of the employment contract sufficient to warrant discharge of the employee serves as adequate grounds for denial of benefits, whether or not the employee acted in a willful or wanton manner. "Where an employee has not acted with the requisite degree of `fault' under Mitchell, he or she has not sacrificed a reasonable expectation in continued financial security such as may be afforded by accrued unemployment compensation benefits." (citation omitted).
108 N.M. at 179, 769 P.2d at 92 (quoting Rodman, 107 N.M. at 761, 764 P.2d at 1319).
This, however, does not end the inquiry. The Department's use of the incorrect definition is not fatal to its case if the reviewing court applied the correct law to the facts. See Rodman, 107 N.M. at 763, 764 P.2d at 1321.
This Court adopted the Wisconsin court's definition of "misconduct" in Mitchell v. Lovington Good Samaritan Center, Inc., 89 N.M. 575, 577, 555 P.2d 696, 698 (1976) (quoting Boynton Cab Co. v. Neubeck, 237 Wis. 249, 259-60, 296 N.W. 636, 640 (1941)):
"... `misconduct' ... is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed `misconduct' within the meaning of the statute."
In concluding that "[t]he claimant's conduct in entering the employer's premises at 3:26 a.m. on December 31, 1987 alone constitutes a willful and wanton violation of a resonable [sic] and known rule," and that "[t]he claimant was discharged for misconduct connected with work and is properly disqualified from receipt of unemployment compensation benefits for having been discharged for misconduct," the district court was applying the correct standard in determining that Sanchez' actions rose to the level of misconduct.
Sanchez argues that evidence of only one incident of his violating his employer's rules cannot support the district court's determination of misconduct, citing Mitchell and Alonzo v. New Mexico Empl. Sec. Dep't, 101 N.M. 770, 689 P.2d 286 (1984). Sanchez' argument fails to take into account the nature of the act involved and the reason for the policy. Misconduct is a *678 question of fact to be determined from all the attendant circumstances. Trujillo v. Employment Sec. Dep't, 105 N.M. 467, 734 P.2d 245 (Ct.App. 1987). In Mitchell we held that although each separate incident of improper attire, name calling and other conduct evincing a willful disregard of the interests of the employer may not have been sufficient in itself to constitute misconduct, taken in totality the conduct was sufficient to classify it as misconduct. On the other hand, in Alonzo we held that claimant's conduct in refusing to wear a smock on one occasion was an isolated incident in an otherwise good performance record and did not rise to the level of willful or wanton misconduct that would harm her employer's business interests.
Sanchez appears to be arguing that the "totality of the circumstances" test applies only in the situation of multiple minor infractions of an employer's rules. However, we have said that
the "totality of circumstances" is relevant in contexts other than discharge after the accumulation of a series of minor incidents. The "totality of circumstances," such as provided by the employee's past conduct and previous reprimands, may also be used to evaluate whether the employee acted with willful or wanton disregard of the employer's interests on the occasion that precipitated his or her termination... . Other relevant circumstances include the worker's knowledge of the employer's expectations, the reasonableness of those expectations, and the presence of any mitigating factors.
Rodman, 107 N.M. at 762, 764 P.2d at 1320.
In Rodman we pointed out that there are two components to the concept of misconduct sufficient to justify denial of benefits. "One is the notion that the employee has acted with willful or wanton disregard for the employer's interests; the other is that this act significantly infringed on legitimate employer expectations." Id. at 761, 764 P.2d at 1319. It is possible for a single act to meet this standard where that one act significantly affects the employer's interests and the policy behind the rule is reasonable and is known to the employee, See, e.g., Trujillo v. Employment Sec. Dep't (holding that employee's refusal to report for overtime work on one occasion constituted misconduct where, under employment contract, employer had right to draft employees to work overtime in emergency situations significantly affecting employer's interests; distinguishing Alonzo on the ground that employee's conduct in that case did not significantly affect her employer's business). See also Coleman v. Department of Labor, 288 A.2d 285 (Del. Super. 1972) (one incident of being drunk on job and brandishing a realistic toy gun is wanton behavior not requiring prior warning before termination); Jackson v. Doyal, 198 So.2d 469 (La. Ct. App. 1967) (an employee's deliberate violation of a reasonable rule in connection with his work is sufficient to constitute willful misconduct; misconduct should be determined not on the basis of the number of violations of a rule, but by the nature of the violation). Cf. In re Apodaca (no evidence that the color of employee's hair significantly affected the employer's business); Mitchell v. Lovington Good Samaritan Center, Inc., 89 N.M. at 577, 555 P.2d at 698 ("inadvertencies or ordinary negligence in isolated instances" not misconduct) (emphasis added) (quoting Boynton Cab Co. v. Neubeck, 237 Wis. 249, 259-60, 296 N.W. 636, 640 (1941)).
We hold that in concluding that Sanchez' actions rose to the level of a "willful and wanton violation of a reasonable and known rule," and that this constituted misconduct connected with work, the district court correctly applied the established law to the facts.

IV
Under the second issue on appeal Sanchez argues that a significant portion of the district court's findings are irrelevant to, and therefore do not support, its conclusion that he was discharged for misconduct connected with his work. Specifically he objects to any findings relating to merchandise shortages and the employer's investigation of those shortages. He argues that *679 these findings cannot be relied on to support the determination of misconduct and must therefore be disregarded by this Court, and that once these findings are disregarded there is no substantial evidence to support the district court's conclusion.
Even if Sanchez were correct in arguing that the findings are irrelevant, and even if they were incorrect, this would not, as he contends, require reversal. Erroneous findings of fact not necessary to support the judgment of the trial court are not grounds for reversal. Specter v. Specter, 85 N.M. 112, 114, 509 P.2d 879, 881 (1973). However, the findings challenged by Sanchez are relevant because they deal with the circumstances surrounding the company policy. The reason for the policy is relevant in determining its reasonableness and the possible effect on the business of a violation of that policy.
At the hearing, the Furr's district manager stated that Sanchez was terminated for violating company policy, not because he was suspected of stealing. In order to hold that this incident rose to the level of misconduct the district court had to conclude that the conduct constituted a willful and wanton violation of a reasonable and known rule. In support of this conclusion the court found that it was company policy that managerial employees not open or close a store alone and that Sanchez was aware of this rule. This finding is supported in the record by a copy of the company's written policy signed by Sanchez. The conclusion is further supported by testimony of the security officer that he witnessed Sanchez entering the store alone at 3:26 a.m. The reasonableness of the policy is shown by other findings indicating why such a policy was instituted. These findings are based on testimony at the hearing.
Sanchez also argues that the district court erred in not making a specific finding that his entering the store adversely affected his employer's interests. This was unnecessary. "[F]indings are to be liberally construed in support of a judgment, and such findings are sufficient if a fair consideration of all of them taken together justifies the trial court's judgment." State ex rel. Goodmans v. Page & Wirtz Constr. Co., 102 N.M. 22, 24, 690 P.2d 1016, 1018 (1984). Under the totality of the circumstances in this case, once it was shown that the employer instituted a reasonable rule in an attempt to stem an ongoing theft problem and that Sanchez violated the rule, it may be inferred that the violation significantly infringed on legitimate employer interests. In entering the store alone and failing to sign the log, Sanchez frustrated the employer's attempt to deal with the theft problem by setting up a system of accountability. Further, when Sanchez disconnected the burglar alarm and did not reconnect it upon leaving the store he left the employer vulnerable to theft. An adverse impact on the employer's interests can result from the creation of an unreasonable risk as well as from actual demonstrated harm. The increased vulnerability to theft and the interference with the attempt to provide accountability are sufficient to constitute a significant adverse impact on the employer's interests.
Even though the Department incorrectly stated the definition of "misconduct," the district court applied the correct law to the facts in this case. One incident of violating a reasonable known rule significantly affecting the employer's interests may constitute misconduct. Substantial evidence in the record as a whole supports the findings of the district court. We therefore affirm.
IT IS SO ORDERED.
SOSA, C.J., and WILSON, J., concur.