This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-37347

**DEL CORAZON HOSPICE, LLC,**

Protestant-Appellant,

v.

**NEW MEXICO TAXATION & REVENUE DEPARTMENT,**

Respondent-Appellee,

**IN THE MATTER OF THE PROTEST TO ASSESSMENTS ISSUED UNDER LETTER ID NOS. L1216767280 AND L0849274160.**

**APPEAL FROM THE ADMNISTRATIVE HEARINGS OFFICE**
**Chris Romero, Hearing Officer**

Sutin, Thayer & Browne
Suzanne W. Bruckner
Wade L. Jackson
Albuquerque, NM

for Appellant

Hector H. Balderas, Attorney General
David Mittle, Special Assistant Attorney General
Santa Fe, NM

for Appellee

### MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}**     Del Corazon Hospice, LLC (Taxpayer) appeals from the administrative hearing officer's (the AHO) decision and order affirming the New Mexico Taxation and Revenue Department's (the Department) assessment of unpaid gross receipts tax pursuant to New Mexico Gross Receipts and Compensating Tax Act, NMSA 1978, §§ 7-9-1 to -117 (1966, as amended through 2020), against Taxpayer in the amount of $290,967.68, including penalty and interest through March 29, 2018. For the reasons that follow, we affirm.

**BACKGROUND**

**{2}**     Taxpayer is a licensed provider of hospice care services authorized by federal authorities to provide services to Medicaid patients. Taxpayer does not provide room and board for the hospice patients it serves nor does it operate nursing home facilities. Instead, Taxpayer provides hospice services in the location where its patients reside, including nursing homes located in Santa Fe and Espanola, New Mexico.

**{3}**     New Mexico is a pass-through state, which means that the nursing home facilities are prohibited from billing Medicaid directly for the room and board services provided to hospice patients. Accordingly, Taxpayer bills Medicaid for all services performed on behalf of its patients, including room and board services provided by the nursing home facilities in which the patients reside. The complete billing process was described at the protest hearing as follows.

**{4}**     First, the nursing home facility bills Taxpayer for the patient's room and board. The nursing home facility's bill contains the patient's identifying information, insurance information, the dates of service, the number of days within the dates of service, the nursing home's daily rate, the total amount due, and the patient's share of the total amount due. Taxpayer is contractually obligated to pay the total amount due, less the patient's share, to the nursing home facility within thirty days. Second, Taxpayer relies on the nursing home facility's bill to prepare a detailed invoice for submission to the appropriate medical care organization that operates as a fiscal intermediary for Medicaid. This invoice consists of detailed room and board information for each day of the billing period for which payment is due for the patient's room and board. Taxpayer then electronically transmits the invoice to the managed care organization. Third, the managed care organization pays Taxpayer ninety-five percent of the charges billed by the nursing home facilities for a patient's room and board because the managed care organization is entitled to a five-percent discount under the applicable regulations.

**{5}**     During the relevant audit period, Taxpayer had two contracts with each of the nursing home facilities it served. The initial contracts between Taxpayer and the nursing home facilities expressly disclaimed any agency relationship between them. The subsequent contracts allowed Taxpayer to serve as the nursing home facility's agent for billing Medicaid for room and board services provided by the nursing home facilities but otherwise disclaimed any agency relationship. Despite these contractual differences, Taxpayer maintained the same billing and payment protocols under both versions of the contracts. Taxpayer did not have the authority to bind any of the nursing home facilities

in a contract with a third party, including the medical care organization that paid for room and board services. There was no requirement to submit the contracts between Taxpayer and the nursing home facilities to Medicaid, and the contracts were not submitted to Medicaid.

**{6}** Following an audit of the period from June 30, 2011 to February 29, 2016, the Department assessed a total of $282,743.91 for unpaid gross receipts tax, penalty, and interest through April 2017. This assessment related only to Taxpayer's receipts from Medicaid for room and board. In July 2017, Taxpayer protested the Department's assessment, arguing that the receipts it received for room and board were not subject to tax. In March 2018, the parties participated in an administrative hearing before the AHO.

**{7}** In May 2018, the AHO issued his decision and order denying Taxpayer's appeal. The AHO found, in relevant part, that "[i]f any of the relevant contracts actually created a genuine agency relationship, the relationship ha[d] not actually been disclosed to the medical care organizations." The AHO then concluded, in relevant part, that (1) "[t]he contracts between the nursing home facilities and Taxpayer failed to established a disclosed agency relationship in which Taxpayer had actual authority to bind the nursing home facilities in contracts with third parties, and Taxpayer was therefore not a disclosed agent under . . . Section 7-9-3.5(A)(3)(f) and . . . 3.2.1.19(C)(1) NMAC"; (2) "[s]ince Taxpayer was not a disclosed agent under [that statute and regulation], Taxpayer's receipts from Medicaid for room and board services were taxable gross receipts"; and (3) Taxpayer was responsible for interest and penalty in regard to the assessment.

## DISCUSSION

**{8}** Taxpayer advances three arguments in this appeal: The AHO erred by (1) applying 3.2.1.19(C) NMAC because it is inapplicable to the facts of this case or, to the extent that that regulation does apply, its requirement that an agent be able to bind a principal impermissibly limits Section 7-9-3.5(A)(3)(f); (2) not finding that Taxpayer was acting as an agent of the nursing home facilities; and (3) finding that Taxpayer's agency relationship with the nursing home facilities had not been disclosed to the medical organizations that administer Medicaid.

**{9}** "On appeal from an agency determination, we determine whether, viewing the evidence in a light most favorable to the agency's decision, the findings have substantial support in the record as a whole." *Wing Pawn Shop v. N.M. Taxation & Revenue Dep't*, 1991-NMCA-024, ¶ 8, 111 N.M. 735, 809 P.2d 649. "Under this standard, we review whatever evidence fairly detracts from the administrative findings as well." *Id.* (internal quotation marks and citation omitted). To the extent that Taxpayer's arguments require us to engage in statutory interpretation, our review is de novo. *A&W Rests., Inc. v. N.M. Taxation & Revenue Dep't*, 2018-NMCA-069, ¶ 6, 429 P.3d 976, *cert. denied*, 2018-NMCERT-___ (No. S-1-SC-37272, Oct. 26, 2018). We further recognize that this Court can only set aside the AHO's decision and order on appeal if we conclude that it is "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence

in the record; or (3) otherwise not in accordance with the law." NMSA 1978, § 7-1-25(C) (2015); *Tucson Elec. Power Co. v. N.M. Taxation & Revenue Dep't*, 2020-NMCA-011, ¶ 6, 456 P.3d 1085.

**{10}** Before addressing Taxpayer's arguments, we identify presumptions that are relevant to this appeal. "There is a presumption that all persons engaging in business in New Mexico are subject to the gross receipts tax." *TPL, Inc. v. N.M. Taxation & Revenue Dep't*, 2003-NMSC-007, ¶ 9, 133 N.M. 447, 64 P.3d 474; *see* § 7-9-5(A) ("To prevent evasion of the gross receipts tax and to aid in its administration, it is presumed that all receipts of a person engaging in business are subject to the gross receipts tax."). Further, "[a]ny assessment of taxes or demand for payment made by the department is presumed to be correct." NMSA 1978, § 7-1-17(C) (2007). "The effect of the presumption of correctness is that the taxpayer has the burden of coming forward with some countervailing evidence tending to dispute the factual correctness of the assessment made by the secretary." 3.1.6.12(A) NMAC; *see MPC Ltd. v. N.M. Taxation & Revenue Dep't*, 2003-NMCA-021, ¶ 12, 133 N.M. 217, 62 P.3d 308 ("The taxpayer claiming that receipts are not taxable bears the burden of proving the assertion."); *Wing Pawn Shop*, 1991-NMCA-024, ¶ 16 ("Where an exemption or deduction from tax is claimed, the statute must be construed strictly in favor of the taxing authority, the right to the exemption or deduction must be clearly and unambiguously expressed in the statute, and the right must be clearly established by the taxpayer." (internal quotation marks and citation omitted)). "Unsubstantiated statements that the assessment is incorrect cannot overcome the presumption of correctness." 3.1.6.12(A) NMAC.

**{11}** Against this background, we turn to Taxpayer's challenges to the AHO's decision and order. Taxpayer argues generally that the AHO erred by concluding that it was not entitled to the tax exemption found at Section 7-9-3.5(A)(3)(f), which provides that "amounts received solely on behalf of another in a disclosed agency capacity" are excluded from gross receipts. As we analyze that challenge, we accept, without deciding, the merits of Taxpayer's first two arguments: (1) 3.2.1.19(C) NMAC is inapplicable to the facts of this case; and (2) Taxpayer was an agent of the nursing home facilities. Further, we assume, without deciding, that the amounts Taxpayer received from Medicaid were received solely on behalf of another—the nursing homes. Accordingly, we are only concerned with whether the AHO erred by finding that Taxpayer's assumed agency relationship with the nursing home facilities was not disclosed to Medicaid.

**{12}** New Mexico's appellate courts have analyzed whether there is a "disclosed agency capacity" only when it was undisputed that 3.2.1.19(C) NMAC applied. *See MPC Ltd.*, 2003-NMCA-021, ¶¶ 14, 37. Accordingly, that authority is unhelpful here because we are proceeding under the assumption that 3.2.1.19(C) NMAC does not apply to these facts. We therefore must use the principles of statutory interpretation to guide us as we interpret the plain language of Section 7-9-3.5(A)(3)(f). *See Dell Catalog Sales L.P. v. N.M. Taxation & Revenue Dep't*, 2009-NMCA-001, ¶ 19, 145 N.M. 419, 199 P.3d 863.

**{13}** "Our main goal in statutory construction is to give effect to the intent of the [L]egislature." *Id.* (internal quotation marks and citation omitted). "[T]he plain language of a statute is the primary indicator of legislative intent." *High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599 (internal quotation marks and citation omitted). "Courts are to give the words used in the statute their ordinary meaning unless the [L]egislature indicates a different intent." *Id.* (internal quotation marks and citation omitted). We often use the dictionary for guidance when determining "the plain meaning of the words at issue[.]" *Griego v. Oliver*, 2014-NMSC-003, ¶ 21, 316 P.3d 865 (internal quotation marks and citation omitted).

**{14}** *Merriam-Webster* defines, in relevant part, the verb "disclose" to mean "to make [(something)] known or public." https://www.merriam-webster.com/dictionary/disclose (last visited July 15, 2020). Similarly, *Black's Law Dictionary* defines "disclose" to mean "[t]o make (something) known or public; to show (something) after a period of . . . being unknown; to reveal." *Disclose*, Black's Law Dictionary (11th ed. 2019). These definitions make it clear that our Legislature intended that a taxpayer make its agency capacity known through an affirmative act.

**{15}** In this case, Taxpayer has failed to direct this Court to any evidence indicating that Taxpayer undertook any affirmative act to disclose to Medicaid its alleged agency capacity with the nursing home facilities. Further, our independent review of the record did not identify any such evidence. Seemingly acknowledging this evidentiary limitation, Taxpayer argues that, based upon the billing it submitted to the managed care organization, Medicaid knew to pay Taxpayer "*at the nursing home daily rate*[.]" From this, we are asked to accept "the plainly obvious inference" that Medicaid knew "that the patient resides in a nursing home." We understand Taxpayer to argue that it could satisfy the requirement that its agency capacity be disclosed to Medicaid through possible inferences and that to conclude otherwise is to "ignore the facts and suspend common sense." Stated differently, we understand Taxpayer to be arguing that an affirmative act demonstrating disclosure is unnecessary. We are not persuaded.

**{16}** As we have stated, by requiring "disclosure" of an agency capacity, our Legislature intended some affirmative act that would make the agency capacity known or public. Accordingly, we cannot say that the information relayed in Taxpayer's billing that potentially supported an inference of an agency capacity satisfied Taxpayer's responsibility to affirmatively disclose its agency capacity such that it was entitled to the tax exemption found at Section 7-9-3.5(A)(3)(f). Because Taxpayer has failed to direct this Court to contrary evidence, we cannot conclude that the AHO's finding that Taxpayer had not disclosed any agency relationship it had with the nursing home facilities to Medicaid was erroneous. Accordingly, on this basis, we hold that the AHO's decision and order denying Taxpayer's protest was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law and was supported by substantial evidence. *See* § 7-1-25(C).

**CONCLUSION**

**{17}**   We affirm.

**{18}   IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**JACQUELINE R. MEDINA, Judge**