1997-NMCA-115

949 P.2d 284

**Andrew Leo LOPEZ, Petitioner–Appellant,**

v.

**NEW MEXICO DEPARTMENT OF TAXATION AND REVENUE, Respondent–Appellee.**

No. 17663.

Court of Appeals of New Mexico.

July 25, 1997.

Certiorari Denied Nov. 12, 1997.

Tom Udall, Attorney General, Bridget Jacober, Special Assistant Attorney General, Santa Fe, for Appellee.

Andrew Leo Lopez, Albuquerque, Pro se Appellant.

*OPINION*

APODACA, Judge.

1. Petitioner Andrew Lopez (Taxpayer) appeals from the decision of the Taxation and Revenue Department (the Department). Denying Taxpayer's protests, the Department's hearing officer upheld the Department's assessment of gross receipts tax against Taxpayer. The tax was assessed against fees paid to Taxpayer for accounting services performed for the debtors in a bankruptcy proceeding, although such fees had not yet been approved by the bankruptcy court. Taxpayer argues that the hearing officer erred in ruling that: (1) Taxpayer's protest of the actual audit (as distinguished from the protest of the later assessment) was not filed timely; and (2) Taxpayer was liable to pay gross receipts tax when he "received" payments for services rendered, even though such payments had not yet been approved by the bankruptcy court. We disagree with Taxpayer's arguments and affirm.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

2. Taxpayer is a certified public accountant. He was selected by the bankruptcy court to provide accounting services for two bankruptcy debtors. Under the terms of the arrangement, Taxpayer was authorized to charge certain fees for his accounting services, the debtors were authorized to pay the fees, and the bankruptcy court directed Taxpayer to apply for approval of the amounts

charged no later than every 180 days. Taxpayer performed services for approximately two years, received the fees he requested, and eventually applied for approval of a total payment in fees of $24,832.81.

3. The Department notified Taxpayer of an audit. As we note later, there is some question concerning the date on which Taxpayer was officially notified of the audit. In any event, as a result of the audit, the Department assessed Taxpayer $1,945.73. This amount consisted of gross receipts tax, interest, and penalties based upon Taxpayer's failure to report and pay taxes on the fees he had received from the debtors during the course of the bankruptcy proceedings. Taxpayer timely objected to the assessment, a hearing was held, and the hearing officer entered an order denying Taxpayer's protests and allowing the assessment.

## II. DISCUSSION

### A. Standard Of Review

4. "On appeal from an agency determination, we determine whether, viewing the evidence in a light most favorable to the agency's decision, the findings have substantial support in the record as a whole." *Wing Pawn Shop v. Taxation & Revenue Dep't,* 111 N.M. 735, 739, 809 P.2d 649, 653 (Ct.App. 1991). Additionally, we, as a reviewing court, "shall set aside a decision and order of the hearing officer only if found to be: (1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with the law." NMSA 1978, § 7-1-25(C) (Repl.Pamp.1995).

### B. Hearing Officer's Findings And Conclusions

5. Unchallenged findings of fact are binding on appeal. *Stueber v. Pickard,* 112 N.M. 489, 491, 816 P.2d 1111, 1113 (1991). Taxpayer has failed to challenge on appeal findings of fact 1, 2, 4–8, 10–15, and conclusions of law 1 and 3. These findings, as well as other findings, are referred to generally in our discussion of the issues.

### C. Protest Of Audit

6. Taxpayer first argues that he was wrongfully targeted for audit because the audit was retaliatory in nature. The hearing officer found that Taxpayer took no action to protest the audit within the time limits imposed by NMSA 1978, Section 7-1-24(B) (Repl.Pamp.1995). Taxpayer contends there is no statute setting forth time limitations to protest a wrongful audit. We disagree. Section 7-1-24 allows protests by a taxpayer of "the application of any provision of the Tax Administration Act," provided the taxpayer files a written protest within thirty days of notice. Section 7-1-24(A), (B). We believe this Section clearly imposed time restrictions on Taxpayer's protest of the audit by the Department.

7. Taxpayer additionally claims that he preserved this issue by filing actual or constructive notices with various agencies. Section 7-1-24(B) provides that a taxpayer shall file a protest "within thirty days of the date of the mailing to the taxpayer by the department of the notice of assessment or mailing to, or service upon, the taxpayer of other peremptory notice or demand, or the date of mailing or filing a return." Under this section, the thirty-day period within which to file a protest could begin when the Department mailed the Taxpayer notice of the assessment or when the Department mailed to or served upon Taxpayer "other peremptory notice or demand[.]" *Id.* "[O]ther peremptory notice or demand" could arguably include the commencement date of the audit. *See id.* As a result, a question arises concerning when the thirty-day period to file a protest begins.

8. We need not decide that question because, giving Taxpayer the most liberal interpretation possible, he would have been required to file his protest no later than April 25, 1992. Although the Department contends that notice of the audit was sent in December 1991, the record also contains a letter from the Department to Taxpayer showing the beginning date for the audit was March 25, 1992. Adoption of this date required Taxpayer to file his protest by April 25, 1992, thirty days after the beginning date of the audit.

9. We have searched the record with particular attention to Taxpayer's citations to the record, which he denotes as "actual or constructive" notice of protest of the audit. Only one, the letter to the Department's secretary dated January 22, 1991, meets the time limits. This letter, however, does not identify the tax protested, the grounds for the protest, or the relief requested, as required by Section 7-1-24(A). Even more damaging to Taxpayer's claim is the wording of this letter, which was not in the form of a protest. Instead, the letter ended with an apparent invitation to the Department to "[b]ring on the auditors and a refund check for $1.65!" These words appear to indicate Taxpayer's acceptance of the audit as an opportunity to vindicate himself.

10. Viewing the evidence in a light most favorable to the hearing officer's decision, we conclude that there was sufficient evidence to support the hearing officer's finding that Taxpayer had not timely protested the audit, as distinguished from the assessment that ultimately resulted from the audit. We thus hold that the hearing officer did not err in concluding that the issue of an improper audit was not properly before him.

### D. Protest Of Tax Assessment

11. The hearing officer determined that Taxpayer had submitted a timely protest to the tax assessed against him as a result of the audit. Nevertheless, he determined that Taxpayer was liable to pay gross receipts tax when he "received" payments for services rendered.

### 1. Terms Of Bankruptcy Court Order

12. Without citation to authority, Taxpayer first argues that the bankruptcy court's order approving and setting the terms of his employment created a contract between all parties to the bankruptcy case and himself. Where arguments in briefs are unsupported by cited authority, we will assume that Taxpayer, after diligent search, was unable to find such authority. *See In re Adoption of Doe,* 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984). We therefore do not address this argument.

13. Taxpayer next argues that, although he "received" his fee payments from the debtors, such payments were only interim, subject to approval by the bankruptcy court and thus potentially subject to that court's order of disgorgement. Taxpayer contends that the payments were thus conditional and not final and that Taxpayer's accounting services were not a completed transaction. Taxpayer thus argues that he was authorized to pay, at his option, tax as he received payments or in a lump sum at completion of the entire transaction. The hearing officer found that Taxpayer had not only received the payments but had not segregated those payments in any way from other business and personal funds, depositing them instead together with fees received from other clients. Those findings are uncontested and thus binding on appeal. *See Stueber,* 112 N.M. at 491, 816 P.2d at 1113. This action by Taxpayer indicates to us that he treated the fees paid by the debtors no differently than gross receipts from other clients. We believe there is an apparent inconsistency between Taxpayer's failure to segregate and hold the fees in trust separately until he obtained the bankruptcy court's approval and his argument that he should not have been assessed tax until the fees were approved.

14. Taxpayer claims he followed NMSA 1978, Section 7-9-3(F)(3) (Repl.Pamp.1995) in designing his employment contract with the bankruptcy court. He also contends that this section provided him with the choice of paying gross receipts tax upon receipt of payments or in one lump sum at the end of his contract. Yet, Taxpayer does not argue there was insufficient evidence to support the hearing officer's decision. Instead, he restates the same arguments made to the hearing officer—that the words "as and when payments are actually received" in Section 7-9-3(F)(3) mean an option to pay upon the final approval or upon final payment being made. We believe the hearing officer's interpretation of the statute was correct and Taxpayer's suggested reading of the statute is flawed. The interpretation of the meaning of a statute is a question of law that we review de novo. *See State v. Rowell,* 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995); *see also*

*Laguna Indus., Inc. v. New Mexico Taxation & Revenue Dep't,* 114 N.M. 644, 648, 845 P.2d 167, 171 (Ct.App.1992), *aff'd,* 115 N.M. 553, 855 P.2d 127 (1993).

15. Even if we were to examine this issue under a sufficiency-of-the evidence standard to determine whether there was evidence to support the hearing officer's decision, Taxpayer's argument likewise fails. As the hearing officer noted in his decision, there is no definition of "received" as that word is applied in Section 7–9–3(F)(3). The hearing officer apparently rejected Taxpayer's attempt to analogize his payments to those received by a building contractor and his claim that his contract gave him a choice of tax payment plans. Instead, the hearing officer decided to give the word "received" its common and ordinary meaning. Viewing the evidence in a light most favorable to the hearing officer's decision, we determine that the findings have substantial support in the record as a whole. *Wing Pawn Shop,* 111 N.M. at 739, 809 P.2d at 653.

16. Additionally, we note that if Taxpayer truly believed the bankruptcy court arrangement created an inviolate contract between himself and the Department, that his fees required approval before they were deemed "received" and thus subject to gross receipts tax, or that there was the possibility of a disgorgement order, his remedy would be to request clarification from the bankruptcy court.

### 2. Jurisdiction

17. Taxpayer argues that the Department had no authority to "usurp" the prerogatives of the bankruptcy court concerning what Taxpayer refers to as a contract between himself and the parties involved in the bankruptcy proceedings. As a result, he argues, the hearing officer had no jurisdiction over the subject matter. This argument is made without citation to the record or to any authority. We will not review on appeal issues where there is no citation to the record or stated authority for a proposition. *See In re Adoption of Doe,* 100 N.M. at 765, 676 P.2d at 1330. Additionally, Taxpayer had the option of requesting relief, such as a stay, from the bankruptcy court.

### III. CONCLUSION

18. We conclude that the hearing officer was correct in determining that Taxpayer did not timely protest Taxpayer's audit by the Department. We also conclude that the hearing officer did not err in determining that Taxpayer was liable for the gross receipts tax assessed against fees actually received and used by Taxpayer, although those fees had not yet been approved by the bankruptcy court. We thus affirm.

19. **IT IS SO ORDERED.**

DONNELLY and FLORES, JJ., concur.