This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-37632

**ACTIVE SOLUTIONS, INCOPORATED,**

Protestant-Appellant,

v.

**NEW MEXICO TAXATION AND REVENUE DEPARTMENT,**

Respondent-Appellee,

**IN THE MATTER OF THE PROTEST TO ASSESSMENT ISSUED UNDER LETTER ID NO. L0983824688.**

**APPEAL FROM THE ADMINISTRATIVE HEARINGS OFFICE**
**Chris Romero, Hearing Officer**

Jane B. Yohalem
Santa Fe, NM

Robert D. Gorman, P.A.
Robert D. Gorman
Albuquerque, NM

for Appellant

Hector H. Balderas, Attorney General
David E. Mittle, Special Assistant Attorney General
Santa Fe, NM

for Appellee

### MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** Active Solutions, Incorporated (Taxpayer) appeals from the administrative hearing officer's (the AHO) decision and order affirming the New Mexico Taxation and Revenue Department's (the Department) assessment of unpaid gross receipts tax, pursuant to New Mexico Gross Receipts and Compensating Tax Act, NMSA 1978, §§ 7-9-1 to -117 (1966, as amended through 2020), against Taxpayer in the amount of $795,878.57, including penalty and interest through May 30, 2018. For the reasons that follow, we affirm.

**BACKGROUND**

**{2}** Under an agreement with the New Mexico Department of Human Services, the New Mexico Department of Health administers the Developmental Disabilities Medicaid Waiver Program (the DD Waiver Program). Although a variety of services are provided under the DD Waiver Program, none are provided directly by the Department of Health. Instead, the Department of Health contracts with third-party service provider agencies who are responsible for providing the services.

**{3}** During all times relevant to this protest, Taxpayer was under contract with the Department of Health as a DD Waiver Program service provider providing family living services. Family living services are intended to provide services to developmentally disabled individuals in a setting as similar to a home as possible, as opposed to an institutional setting. Nearly all aspects of the delivery of family living services are state-regulated.

**{4}** In order to provide the family living services to its clients, Taxpayer contracts with direct service providers that are qualified to deliver the service. Nevertheless, it is Taxpayer that bills the state for the provided family living services. Taxpayer's payments to its direct service providers are conditioned on Taxpayer first receiving payment from the state.

**{5}** In 2013, Taxpayer stopped paying gross receipts tax on the funds it received from the state for the family living services it was providing because Taxpayer considered itself to be an agent of the state. In March 2017, the Department assessed Taxpayer $770,648.21 in past unpaid gross receipts tax, a $154,129.60 penalty, and $63,673.54 in interest. Taxpayer formally protested the assessment in June 2017, and the matter proceeded to a hearing in front of the AHO.

**{6}** At the hearing, the Department entered into evidence an updated assessment in the amounts of $550,469.50 in gross receipts tax, $154,130.86 in penalty, and $91,278.21 in interest. Following the hearing, the parties submitted written closing arguments. Thereafter, the AHO entered a decision and order denying Taxpayer's protest. The decision and order included the following conclusions, as relevant to this appeal: (1) "[t]he statutes, rules, policies, procedures, and contracts governing the relationship between the state and Taxpayer failed to establish a disclosed agency relationship in which Taxpayer had actual authority to bind the state to obligations with third parties, and Taxpayer was therefore not a disclosed agent under . . . Section 7-9-

3.5(A)(3)(f) and . . . 3.2.1.19(C)(1) NMAC"; (2) "[s]ince Taxpayer was not a disclosed agent under [that statute and regulation], Taxpayer's receipts derived from providing [f]amily [l]iving [s]ervices under the DD Waiver [Program] were taxable gross receipts"; (3) "[u]nder NMSA 1978, Section 7-1-67 [(2013)], Taxpayer is liable for accrued interest under the Assessment, which shall continue to accrue until the tax principal is satisfied"; and (4) "[u]nder NMSA 1978, Section 7-1-69 (2007), Taxpayer is liable for [a] civil negligence penalty under the negligence definition found under . . . 3.1.11.10(C) NMAC." This appeal followed.

## DISCUSSION

**{7}**    Taxpayer advances four arguments on appeal: (1) the AHO erred by applying 3.2.1.19(C) NMAC rather than the law of agency when deciding whether Taxpayer was entitled to the tax exclusion in Section 7-9-3.5(A)(3)(f); (2) if it was not error to apply 3.2.1.19(C) NMAC, the AHO erred by concluding that Taxpayer had not met the requirements of that regulation as applied to the statute; (3) the assessment of gross receipts tax against Taxpayer under these circumstances is inconsistent with both federal and state tax policy; and (4) if it was not error to deny Taxpayer's protest, the AHO erred by upholding the penalty imposed because Taxpayer acted in good faith when it concluded it was an agent of the state. We begin by setting forth our standard of review and relevant presumptions. We then address each of Taxpayer's arguments in turn.

## I.    Standard of Review and Relevant Presumptions

**{8}**    "On appeal from an agency determination, we determine whether, viewing the evidence in a light most favorable to the agency's decision, the findings have substantial support in the record as a whole." *Wing Pawn Shop v. N.M. Taxation & Revenue Dep't*, 1991-NMCA-024, ¶ 8, 111 N.M. 735, 809 P.2d 649. "Under this standard, we review whatever evidence fairly detracts from the administrative findings as well." *Id.* (internal quotation marks and citation omitted). Further, while we are not bound by the agency's interpretation of the law, *see A&W Rests., Inc. v. N.M. Taxation & Revenue Dep't*, 2018-NMCA-069, ¶ 6, 429 P.3d 976, *cert. denied*, 2018-NMCERT-___ (No. S-1-SC-37272, Oct. 26, 2018) (stating that our review is de novo when we engage in statutory construction), "we give a heightened degree of deference to legal questions that implicate special agency expertise or the determination of fundamental policies within the scope of the agency's statutory function." *Jicarilla Apache Nation v. Rodarte*, 2004-NMSC-035, ¶ 25, 136 N.M. 630, 103 P.3d 554 (internal quotation marks and citation omitted). We also acknowledge that this Court can only set aside the AHO's decision and order if it is "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with the law." NMSA 1978, § 7-1-25 (2015).

**{9}**    "To prevent evasion of the gross receipts tax and to aid in its administration, it is presumed that all receipts of a person engaging in business are subject to the gross receipts tax." Section 7-9-5(A). "[T]he taxpayer has the burden of overcoming this

presumption." *ITT Educ. Servs., Inc. v. N.M. Taxation & Revenue Dep't*, 1998-NMCA-078, ¶ 5, 125 N.M. 244, 959 P.2d 689. "Where an exemption or deduction from tax is claimed, the statute must be construed strictly in favor of the taxing authority, the right to the exemption or deduction must be clearly and unambiguously expressed in the statute, and the right must be clearly established by the taxpayer." *Wing Pawn Shop*, 1991-NMCA-024, ¶ 16 (internal quotation marks and citation omitted).

**{10}** Additionally, "[a]ny assessment of taxes or demand for payment made by the department is presumed to be correct." NMSA 1978, § 7-1-17(C) (2007). Therefore, "the taxpayer [also] has the burden of coming forward with some countervailing evidence tending to dispute the factual correctness of the assessment made by the secretary." 3.1.6.12(A) NMAC. "Unsubstantiated statements that the assessment is incorrect cannot overcome the presumption of correctness." *Id.* If a taxpayer rebuts this presumption, the burden is shifted back to the department to show the correctness of the assessment. *MPC Ltd. v. N.M. Taxation & Revenue Dep't*, 2003-NMCA-021, ¶ 13, 133 N.M. 217, 62 P.3d 308.

**II.      Taxpayer Has Not Demonstrated That the AHO Erred by Applying 3.2.1.19(C) NMAC When Analyzing Whether Taxpayer Was Entitled to the Exemption Found in Section 7-9-3.5(A)(3)(f)**

**{11}** Taxpayer argues that the AHO erred in applying 3.2.1.19(C) NMAC for two reasons: First, 3.2.1.19(C) NMAC does not apply to the facts of this case. Second, 3.2.1.19(C) NMAC is an unlawful limitation of Section 7-9-3.5(A)(3)(f). Under both scenarios, Taxpayer urges this Court to conclude that the AHO erred by applying the requirements of the regulation when deciding whether Taxpayer was entitled to the exemption found in the statute. In its answer brief, the Department contends that Taxpayer has impermissibly changed its theory on appeal. *See* § 7-1-25(A) ("If the protestant or secretary is dissatisfied with the decision and order of the hearing officer, the party may appeal to the court of appeals for further relief, but only to the same extent and upon the same theory as was asserted in the hearing before the hearing officer."). Replying to the Department's contention, Taxpayer asserts that it made these arguments in the written closing argument submitted to the AHO.

**{12}** As a threshold matter, we address whether Taxpayer has impermissibly changed its theory in this appeal. Following our independent review of the record, it is clear that Taxpayer argued for application of both Section 7-9-3.5(A)(3)(f) and 3.2.1.19(C) NMAC throughout the protest, from its initial protest letter to the joint prehearing statement to its closing argument. Therefore, we will not further address Taxpayer's contention that 3.2.1.19(C) NMAC does not apply to the facts of this case because it constitutes an impermissible change in theory on appeal. *See* § 7-1-25(A). Further, Taxpayer's argument for application of the regulation contributed, at least in part, to any error that the AHO committed by applying that regulation. *See Cordova v. Taos Ski Valley, Inc.*, 1996-NMCA-009, ¶ 13, 121 N.M. 258, 910 P.2d 334 ("A party who has contributed, at least in part, to perceived shortcomings in a . . . ruling should hardly be heard to complain about those shortcomings on appeal."). As for Taxpayer's other contention—

that 3.2.1.19(C) NMAC is an unlawful limitation of Section 7-9-3.5(A)(3)(f)—this argument was set forth in Taxpayer's closing argument and is therefore not an impermissible change in theory on appeal. Accordingly, we need only address Taxpayer's argument that 3.2.1.19(C) NMAC is an unlawful limitation of Section 7-9-3.5(A)(3)(f).

**{13}** In *MPC Ltd.*, this Court construed the language of 3.2.1.19(C) NMAC to define "disclosed agency capacity" as used in Section 7-9-3(F)(2)(f).[1] *MPC Ltd.*, 2003-NMCA-021, ¶ 37. In doing so, the Court indicated that the regulation and the statute required two circumstances to demonstrate a "disclosed agency capacity."[2] *Id.* First, the agent must have the authority to bind the principal to an obligation created by the agent. *Id.* Second, the beneficiary of that obligation must be informed by contract that he or she has a right to proceed against the principal to enforce the obligation. *Id.*

**{14}** Taxpayer argues that *MPC Ltd.* is distinguishable because the taxpayer in that case did not contest that the regulation applied. *See id.* ¶ 14 (noting that the taxpayer did not attack the "conclusion of law that the receipts attributed to payroll constituted 'reimbursement of expenditures incurred' "). However, as we explained above, Taxpayer argued for application of both the statute and the regulation throughout its protest up until this appeal, effectively putting itself in the same position as the taxpayer in *MPC Ltd.* Accordingly, we decline to distinguish *MPC Ltd.* on that basis. Further, as did this Court in *MPC Ltd.*, we view 3.2.1.19(C) NMAC as being harmonious with the plain language of Section 7-9-3.5(A)(3)(f) and not an unlawful limitation of that statute. We therefore conclude that Taxpayer has not demonstrated that the AHO erred in applying the requirements of 3.2.1.19(C) NMAC when deciding whether Taxpayer was entitled to the tax exemption at Section 7-9-3.5(A)(3)(f).

### III. Taxpayer Has Not Demonstrated That the AHO Erred by Concluding That Taxpayer Had Not Met the Requirements of Section 7-9-3.5(A)(3)(f) and 3.2.1.19(C) NMAC

**{15}** Taxpayer, alternatively, also argues that it nonetheless met the requirements for the exemption discussed in Section 7-9-3.5(A)(3)(f) and 3.2.1.19(C) NMAC. Therefore, we must now analyze whether the AHO erred by concluding that Taxpayer failed to demonstrate that (1) it had the authority to bind the principal (the state) to an obligation created by Taxpayer; and (2) that the beneficiaries of that obligation (the direct service providers) were informed by contract that they had a right to proceed against the principal (the state) to enforce that obligation. *See MPC Ltd.*, 2003-NMCA-021, ¶ 37.

---

[1] This Court in *MPC Ltd.* was interpreting the language of Section 7-9-3(F)(2)(f) (2002), which excluded "amounts received solely on behalf of another in a disclosed agency capacity" from gross receipts tax. This tax exemption is now codified at Section 7-9-3.5(A)(3)(f)—the statute at issue in this case—and employs the same language.

[2] This Court also noted that, in addition to those two circumstances, "the taxpayer must also engage in specific bookkeeping and billing procedures." *Id.* ¶ 37.

**{16}** Taxpayer offers extensive argument surrounding the first requirement in its brief in chief and, in support, cites the portion of the record containing the provider agreement it entered into with the state regarding its provision of services under the DD Waiver Program. However, even if we were to accept Taxpayer's argument that it had the authority to bind the state, Taxpayer fails to establish that it met the second requirement. In its brief in chief, Taxpayer cites no evidence in the record suggesting that it informed the direct service providers by contract that they had a right to proceed against the state. Instead, Taxpayer argues that, under the New Mexico Administrative Code, the direct service provider "has entered into an agreement with the [s]tate as principal." *See* 3.2.1.12(G) NMAC ("Any individual who enters into an agreement with the [S]tate of New Mexico to provide home based support services for developmentally disabled individuals in the home of the developmentally disabled individuals or the home of the support provider and receives payments which under 26 [U.S.C. §] 131[2018] are 'qualified foster care payments' is not thereby engaging in business."). It is not until its reply brief that Taxpayer cites the portion of the record proper containing its contracts with the direct service providers when arguing that those contracts informed the direct service providers that they have a right to proceed against the state to enforce an obligation.

**{17}** Generally, this Court will not consider arguments that were not raised in the brief in chief, unless such arguments are directed to new arguments or authorities in the answer brief. *Wilcox v. N.M. Bd. of Acupuncture & Oriental Med.*, 2012-NMCA-106, ¶ 15, 288 P.3d 902. Here, we cannot say that Taxpayer's argument based on the direct service provider contracts was directed to new arguments or authorities in the answer brief. Nevertheless, even when we consider Taxpayer's contracts with the direct service providers, we are not persuaded that the AHO erred by concluding that Taxpayer had not informed the direct service providers by contract that they had a right to proceed against the state as required under *MPC Ltd.*, 2003-NMCA-021, ¶ 37. We explain.

**{18}** Taxpayer does not direct this Court to any portion of contracts it had with the direct service providers that explicitly informs the direct service providers that they could enforce the payment obligation against the state, and we have been unable to identify any such contractual language in our independent review. Instead, Taxpayer argues that the following language put the direct service providers on notice that they had no recourse against Taxpayer for the state's nonpayment and instead only had recourse against the state:

> For DD Waiver Family Living Support Service for each consumer: $2,075.00 per complete calendar month of service. *Payment is contingent on successful billing by [Taxpayer].* Partial months of service shall be prorated by day. This sum is subject to change as the state billing rate changes. This sum is subject to being withheld in part or total if the consultant does not deliver the service as provided in this contract. This sum may also be adjusted at the discretion of [Taxpayer] Management should the consumer be hospitalized or missing for more than one week.

We note first that the cited language is found under a heading setting out Taxpayer's payment obligations rather than the state's payment obligations. Second, that contract language neither explicitly informs the direct service providers of a right to enforce a payment obligation against the state nor does it imply such a right. The provision merely notifies the direct service providers that payment is contingent on Taxpayer receiving funds and identifies situations in which payment would deviate from the identified monthly payment amount. Therefore, based on the language relied on by Taxpayer, we cannot say that the AHO erred by concluding that Taxpayer had not informed the direct service providers by contract that they had a right to proceed against the state. *See MPC Ltd.*, 2003-NMCA-021, ¶ 37. Because Taxpayer has failed to demonstrate that the AHO erred in so concluding, we hold that the AHO's conclusion that Taxpayer was not entitled to the tax exemption found at Section 7-9-3.5(A)(3)(f) was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law and was supported by substantial evidence.

### IV. Taxpayer's Public Policy Argument Is Unsupported by Citation to Authority and We Decline to Address It

**{19}** Taxpayer argues that the "Department's attempt to assess and collect gross receipts tax from [Taxpayer] and other agencies serving as agents of the [s]tate for the provision of in-home family living services is contrary to both federal and state tax policy." Taxpayer argues that "[s]uch a tax would restrict the agencies willing and able to assist the [s]tate in providing these services to a very limited number of non-profit agencies that do this work in New Mexico."

**{20}** As we have recognized, "[w]here an exemption or deduction from tax is claimed, the statute must be construed strictly in favor of the taxing authority, the right to the exemption or deduction must be clearly and unambiguously expressed in the statute, and the right must be clearly established by the taxpayer." *Wing Pawn Shop*, 1991-NMCA-024, ¶ 16 (internal quotation marks and citation omitted). For the reasons discussed in the preceding sections, we have concluded that Taxpayer has failed to meet that burden in this case. Further, Taxpayer has not cited any authority suggesting that this Court can independently recognize a public policy exemption to gross receipts tax that goes beyond the statutory exemptions created by our Legislature. *See El Castillo Ret. Residences v. Martinez*, 2017-NMSC-026, ¶ 27, 401 P.3d 751 ("It is the particular domain of the [L]egislature, as the voice of the people, to make public policy." (alteration, internal quotation marks, and citation omitted)). Accordingly, we decline to further address this argument. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists.").

### V. Taxpayer Has Not Demonstrated That the AHO Erred by Upholding the Penalty Assessed by the Department

**{21}** Lastly, Taxpayer argues that the AHO "did not challenge [its] good faith" in failing to pay gross receipts tax on the funds it received for providing family living services and

contends that "it was reasonable for [it] to arrive at the conclusion that no gross receipts tax was due" on those funds. Accordingly, Taxpayer urges this Court to "reverse the hearing officer's decision to assess a penalty, even if this Court holds against Taxpayer and decides that gross receipts tax is due."

**{22}** Under the Tax Administration Act, a penalty shall be assessed when a taxpayer fails to pay the required amount of tax due, if the failure is "due to negligence or disregard of department rules and regulations[.]" Section 7-1-69(A). However, "[n]o penalty shall be assessed against a taxpayer if the failure to pay an amount of tax when due results from a mistake of law made in good faith and on reasonable grounds." Section 7-1-69(B). In this case, the AHO concluded that "Taxpayer is liable for [a] civil negligence penalty under the negligence definition found under . . . 3.1.11.10(C) NMAC." Under that regulation, "negligence" is defined as "inadvert[e]nce, indifference, thoughtlessness, carelessness, erroneous belief or inattention." *Id.*

**{23}** Here, Taxpayer failed to cite any evidence in the record in support of its argument that it acted reasonably when it decided to forego payment of gross receipts tax on the funds it received for providing family living services. "We will not search the record for facts, arguments, and rulings in order to support generalized arguments." *Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104. Nevertheless, having independently reviewed the record, we note that it indicates that Taxpayer did not confer with legal counsel or a tax professional about its gross receipts tax liability and instead relied on its own interpretation of Section 7-9-3.5 and discussions with unidentified colleagues when it decided to forego paying gross receipts tax on the funds it received for providing family living services. Additionally, Taxpayer has not challenged the AHO's finding that Taxpayer had not read the regulations that governed the claimed exemption. *See Lopez v. N.M. Taxation & Revenue Dep't*, 1997-NMCA-115, ¶ 5, 124 N.M. 270, 949 P.2d 284 ("Unchallenged findings of fact are binding on appeal."). Accordingly, we conclude that "Taxpayer did not demonstrate that [it] reasonably attempted to ascertain whether [its] actions were justifiable under the tax statutes and regulations." *Grogan v. N.M. Taxation & Revenue Dep't*, 2003-NMCA-033, ¶ 35, 133 N.M. 354, 62 P.3d 1236. For that reason, Taxpayer has not demonstrated that the AHO erred by upholding the penalty assessed by the Department.

**CONCLUSION**

**{24}** We affirm.

**{25} IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**JACQUELINE R. MEDINA, Judge**